383 A.2d 870

**COMMONWEALTH of Pennsylvania**

v.

**Russell MENGINIE, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 14, 1977.

Decided March 23, 1978.

Frank J. Marcone, Media, Thomas C. Carroll, Huntingdon Valley, for appellant.

Ralph B. D'Iorio, Asst. Dist. Atty., for appellee.

Before EAGEN, O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

158

MANDERINO, Justice.

On December 16, 1974, appellant, Russell Menginie, was tried by a judge and jury and found guilty of voluntary manslaughter, criminal conspiracy, and commission of a crime with a firearm. Appellant was sentenced to a term of imprisonment of not less than four nor more than eight years on the voluntary manslaughter conviction, and to a concurrent term of the same duration on the criminal conspiracy charge. Sentence on the firearms conviction was suspended. Post-verdict motions were denied, and following a transfer from the Superior Court, all of appellant's convictions are before us on this direct appeal.

Appellant raises a number of issues only one of which we need address. Appellant contends he cannot be held vicariously responsible for the crimes charged—*i. e.*, his demurrer to the evidence should have been sustained—because the prosecution did not prove its theory of a conspiracy to commit the crime. We agree.

At trial the prosecution's evidence concerning the facts surrounding the crime consisted of testimony by the deceased's brother, the deceased's father, and another witness, all of whom were present at the scene. From their testimony the following facts appeared. Kyle Culbert, the deceased, along with his brother and father, went in the family car to a drive-in restaurant. The time was approximately 2:00 a. m. The car pulled into the restaurant and the three men remained in their car, waiting to be served. The deceased's father was operating the vehicle, with the deceased sitting in the front seat next to the right side window, and with the deceased's brother sitting between them.

While the Culberts waited in line, a dark-colored station wagon, driven by appellant, approached the Culbert vehicle from the right. There was a passenger in the front seat of the station wagon, and a third occupant in the rear seat. According to the deceased's brother, the station wagon

"came up . . . real close" to the Culbert car, backed up a short distance, and then "came forward to the same position" within a short distance of the Culbert vehicle. A witness in the car ahead of the Culbert vehicle testified that appellant's car "attempted to squeeze in" on the Culbert vehicle. The witness stated: "[I]t was just like a face off to see who was going to get in front of who." The brother of the deceased as well as the deceased's father testified that the occupants of the station wagon were laughing.

When the station wagon approached the Culbert vehicle the second time, the deceased's father testified that the deceased said to the three men: "How about knock it off." The deceased's brother testified that the deceased's words were: "What are you trying to do?" When the station wagon backed up the deceased and his brother got out of the car, as did the passenger in the front seat of the station wagon. The deceased's brother testified that when he and the deceased exited their vehicle, appellant had not yet alighted from the station wagon. The witness in the car ahead of the Culbert car testified that appellant did eventually get out of his car, although he remained close to the door of the car.

At this point—with appellant, the passenger from the front seat of the station wagon, and the two young Culberts out of the cars, and with the senior Culbert alighting from his car—the passenger in the rear seat of the station wagon exited the car and fired one shot which fatally wounded Kyle Culbert. Appellant and the two passengers in the station wagon then drove away.

The identity of the party who fired the fatal shot is still unknown. Appellant and John Gorman, the passenger in the front seat of the station wagon, were tried separately. Gorman's demurrer to the prosecution's evidence was sustained. Appellant did not testify at his trial and presented no defense.

It is clear that appellant did not fire the fatal shot. Therefore, appellant can be held criminally responsible for

this death only through some theory of vicarious liability. The prosecution in this case has proceeded on a conspiracy theory. In *Commonwealth v. Wilson*, 449 Pa. 235, 296 A.2d 719 (1972), we reviewed what must be proven before one could be held criminally responsible for an act of another on the basis that he was a "co-conspirator":

> "All theories that are recognized under our law to hold one responsible for the criminal acts of another require the existence of a *shared criminal intent*. It is well settled that the nexus which renders all members of a criminal conspiracy responsible for the acts of any of its members is the *unlawful agreement*." 449 Pa. at 238, 296 A.2d at 721. (Emphasis added.)

The prosecution argues that we should infer the requisite unlawful agreement in this case because the actions of appellant and his two companions "manifested a joint agreement . . . to cause trouble with the victim and his family. Since there was a common design, in which all participated, all were therefore responsible for the acts of each co-conspirator." We think the prosecution paints with too broad a brush. Although the facts of this case might warrant the inference that appellant and his companions expressly or tacitly agreed to taunt or "bully" the victim and his family, they are not sufficient to support an inference of an unlawful agreement to kill or inflict serious bodily injury.

In a case of conspiracy, we require the prosecution to prove an unlawful agreement because such an agreement satisfies the broader requirement of any theory of vicarious criminal liability—the shared criminal intent. Here, the prosecution has not produced sufficient evidence to establish that the appellant shared a criminal intent to kill, inflict serious bodily harm, or even enter into an affray with the deceased. There is no indication that, prior to this confrontation in the parking area, appellant and his companions formed an intent to engage in a violent altercation with the victim. There is no indication that appellant had ever met or known the victim prior to this encounter, thus no inference can be drawn that revenge or vindication was the basis

for an agreement to "get" the victim. More importantly, there is no evidence that appellant encouraged, acquiesced in, or even knew that the person in the rear seat had a gun, or that he intended to use it. This Court has held that a defendant who had no prior knowledge of plans to commit a homicide, and who in no way aided that homicide, cannot be held responsible for it. *Commonwealth v. Giovanetti*, 341 Pa. 345, 353, 19 A.2d 119, 123 (1941), cited in *Commonwealth v. Wilson, supra*, 449 Pa. at 238–39, 296 A.2d at 721. The prosecution has simply failed to produce any evidence of an unlawful agreement to engage in criminal behavior.

This case is very different from one where in the perpetration of a felony, one participant, unbeknownst to another, is armed with a deadly weapon and in the course of that felony, uses the weapon. In those cases, we hold all the participants criminally liable for the acts of each because of the underlying agreement to commit the felony and because of the inherent danger attending the commission of such acts. We cannot, using the rationale of those cases, hold a person liable for homicide simply because it appears some kind of confrontation is about to take place and another participant, without the knowledge, request, or encouragement of the party charged, radically alters the nature of the incipient encounter by using a deadly weapon. In such a case, although it might be possible to infer a shared intent to engage in a particular affray, there is no shared *criminal* intent. It is not a crime to taunt and laugh at others in another automobile or to rudely attempt to cut into line in front of another in order to get served sooner. Although we might condemn such behavior, we cannot infer from those actions, standing alone, the existence of a shared criminal intent to assault or inflict serious bodily harm. *Cf., Commonwealth v. Vaughn*, 459 Pa. 35, 326 A.2d 393 (1974) (shared criminal intent established where appellant and his companions, all armed with knives, left the house seeking revenge for an earlier stabbing incident); *Commonwealth v. Leach*, 455 Pa. 448, 317 A.2d 293 (1974) (jury could reasonably infer that appellant was an active partner in the

deceased's death where one of appellant's companions was visibly carrying a shotgun and appellant and two others were seen walking together immediately prior to the fatal shooting); *Commonwealth v. Rife*, 454 Pa. 506, 312 A.2d 406 (1973) (in violent confrontation, in which shots were fired, lethal weapons were used in the fight, and it was clear that the confrontation would be a violent one, each participant held responsible for one another's acts as an accomplice).

We hold that on the present record the prosecution has failed to establish an agreement or common understanding, either explicit or implied, formed either before or during this confrontation, to commit the act for which appellant was charged. Absent any evidence of shared criminal intent, appellant cannot be held vicariously liable for the death that occurred. *Commonwealth v. Wilson*, 449 Pa. 235, 296 A.2d 719 (1972).

The judgment of sentence is reversed and appellant is discharged.

JONES, former C. J., and ROBERTS, J., took no part in the consideration or decision of this case.