**COMMONWEALTH of Pennsylvania**

v.

**Carlo JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Argued May 13, 1998.
Filed Oct. 23, 1998.

---

**1.** Kan. Stat. Ann. 59–29a01 to 59–29a15 (1994 & Supp.1996).

Oscar Gaskins, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for the Com., appellee.

Before McEWEN, President Judge, and DEL SOLE, KELLY, POPOVICH, FORD ELLIOTT, JOYCE, ORIE MELVIN, MUSMANNO and SCHILLER, JJ.

FORD ELLIOTT, Judge:

In December 1994, appellant Carlo Johnson was arrested and charged with criminal homicide, aggravated assault, recklessly endangering another person, and criminal conspiracy.[1] These charges arose out of appellant's participation in a series of incidents on November 11, 1994, which resulted in the death of Edward Polec and injuries to Richard Stuber and John Atkinson.

The facts of the case as are as follows. On November 4, 1994, an argument occurred in the Fox Chase section of Philadelphia between a group of teenagers from Abington and a group of teenagers from Fox Chase. One of the Abington teenagers, Jessica Simons, told Bou Khathavong about the incident. During the following week, Khathavong recruited a group of people from Abington to go to Fox Chase to seek revenge.

On November 11, 1994, Anthony Rienzi, Kevin Convey, and other teenagers went to Philadelphia to purchase marijuana. A short time later, Rienzi and Convey met Khathavong and appellant. Khathavong told the group he wanted to meet some of the people who usually gathered at the Fox Chase Recreation Center at a McDonalds at 10:30 p.m. Appellant, Khathavong, Rienzi, and Convey then went to Thomas Crook's house to recruit more people for the fight they expected to occur at the McDonalds, with Khathavong in particular calling people for this purpose. While at Crook's house, appellant talked about 'curbing' somebody, which he explained to mean that "if somebody was laying down on their stomach, he would open their mouth up over at the corner of the curb and kick down on the back of their head." (Notes of testimony, 1/23/96 at 25–26.) After the group left Crook's house in two cars, Nicholas Pinero joined the group in his car. The three cars then went from the McDonalds to Rob Cofield's house. Cofield was not at home. While the group was waiting in the street for Cofield, appellant walked two houses up the street to Sonny Castorina's house and retrieved two wooden baseball bats. (*Id.* at 33.) The car containing Rienzi and Convey also contained a baseball bat.

While these events were occurring, a group of teenagers, including the victim, was gathering at the Recreation Center. At approximately 9:30 p.m., some members of this group went to McDonalds, where they encountered some of the Abington teenagers. The Fox Chase group fled, and at some point the Abington group got out of their cars and began pursuit. Dewan Alexander and Nicholas Pinero hit victim John Atkinson with a baseball bat, then hit Matt Malone when he tried to assist Atkinson. Appellant slammed another victim, Richard Stuber, to the ground. Stuber also suffered head injuries from a broken bottle. The group from Abington got back in their cars and drove around looking for more Fox Chase teenagers. They exited at St. Cecilia's Church, where they encountered Edward Polec and

---

[1]. Appellant was also charged with possession of an instrument of a crime; however, the Commonwealth later dismissed this charge.

his brother Billy. Convey swung a baseball bat at Edward Polec, and though he missed, Polec fell while trying to avoid the attack. Once on the ground, Polec was struck several times by Convey. Crook, Rienzi, Alexander, and Pinero then gathered around. Rienzi hit Polec in the head with the bat, then picked up Polec and held him while Pinero hit Polec in the face and head several times with a bat. Alexander kicked Polec several times in the head with the steel-toed boots he was wearing. The group then fled the scene, leaving Polec mortally wounded; he died the next morning.

Appellant stood trial for several weeks in January 1996 along with co-defendants Crook, Pinero, Rienzi, Alexander, and Khathavong. Convey pleaded guilty and testified on behalf of the Commonwealth. On February 5, 1996, Crook, Pinero, and Rienzi were found guilty of third degree murder and criminal conspiracy with respect to Mr. Polec. (Notes of testimony, 2/5/96 at 21, 26, 33.) Alexander was found guilty of voluntary manslaughter and criminal conspiracy with respect to Mr. Polec. (*Id.* at 29.) Khathavong was found guilty of criminal conspiracy. (*Id.* at 32.)

Appellant was convicted of criminal conspiracy with respect to Mr. Polec, and was acquitted of all other charges. (*Id.* at 25.) Colloquy with the jury at the time it rendered its verdict was as follows:

COURT OFFICER: With regard to Criminal Homicide, with regard to Mr. Carlo Johnson, please read your verdict in full.

JURY FOREPERSON: Not guilty.

COURT OFFICER: With regard to Aggravated Assault, Victim: Stuber, how say you: Guilty or not guilty?

JURY FOREPERSON: Not guilty.

COURT OFFICER: With regard to Recklessly Endangering Another Person, how say you: Guilty or not guilty?

JURY FOREPERSON: Not guilty.

COURT OFFICER: **With regard to Criminal Conspiracy, Victim: Polec, how say you: Guilty or not guilty?**

JURY FOREPERSON: **Guilty.**

COURT OFFICER: With regard to Criminal Conspiracy, Victim: Stuber, how say you: Guilty or not guilty?

JURY FOREPERSON: Not guilty.

COURT OFFICER: Your Honor, the Defendant, Carlo Johnson, has been found not guilty of Criminal Homicide, not guilty of Aggravated Assault, Victim: Stuber, not guilty of Recklessly Endangering Another Person, **guilty of Criminal Conspiracy, Victim: Polec,** and not guilty of Criminal Conspiracy, Victim: Stuber.

*Id.* at 23–24 (emphasis added). Appellant was sentenced to five to ten years' imprisonment and fined $15,000.

On appeal, numerous issues arising from the joint trial were raised by all six defendants.[2] A panel of this court addressed the merits of these contentions in a single memorandum captioned *Commonwealth v. Crook,* 706 A.2d 1250 (Pa.Super. 1997); *Commonwealth v. Pinero,* 706 A.2d 1256 (Pa.Super. 1996); *Commonwealth v. Rienzi,* 706 A.2d 1257 (Pa.Super. 1996); *Commonwealth v. Alexander,* 706 A.2d 1247 (Pa.Super. 1996); *Commonwealth v. Johnson,* (No. 1425 Philadelphia 1996); *Commonwealth v. Khathavong,* 706 A.2d 1254 (Pa.Super.1996). The panel affirmed the convictions of all of appellant's co-defendants. However, while finding no merit to most of the issues presented by appellant, the court determined that it could not address his sufficiency of the evidence argument. The panel vacated appellant's sentence and remanded for a clarification of the conspiracy charge on which appellant was convicted. The panel reasoned that because the Commonwealth's criminal information defined the criminal objective of appellant's alleged conspiracy as "to beat Edward Polec," appellant was never charged with conspiracy to commit murder.[3]

2. The cases were not technically consolidated on appeal.

3. The panel noted the trial court's remarks at time of sentencing regarding the conspiracy charge. Appellant's counsel argued that "the Conspiracy that we are dealing with here is obvi-

ously a Conspiracy to commit, I guess, Third Degree Murder." (Notes of testimony, 3/19/96 at 358.) Counsel then argued that appellant did not share an intent to commit murder. (*Id.*) The court indicated that it was not sure whether appellant was convicted of conspiracy to commit

■ The Commonwealth petitioned for *en banc* rearrangument contending that the criminal information was sufficient to inform appellant of the charge against him and also that appellant raised no objection to the information either substantively or procedurally, below or on appeal.[4] Additionally, the Commonwealth argued that it tried the case on the theory that all six co-defendants conspired to murder Edward Polec, that the defense vigorously defended on this charge, and that the trial court properly instructed the jury on the involvement of all of the defendants in the conspiracy to murder Edward Polec.[5] We granted rearrangument and now address appellant's question as to whether the evidence was sufficient to convict him on the charges of conspiracy to commit murder in the death of Edward Polec.

---

murder or conspiracy to commit aggravated assault, given that the jury was instructed on both crimes. (*Id.* at 359.) While the court indicated that the jury "probably" convicted him of conspiracy to commit third degree murder, "I have been going on the assumption, for the purpose of the Guidelines, that it is only Conspiracy to commit Aggravated Assault, just out of an abundance of caution." (*Id.*) Appellant's sentence of 5 to 10 years did not exceed the statutory maximum for either conspiracy to commit murder or conspiracy to commit aggravated assault.

4. In the alternative, the Commonwealth suggests that any variance between the information and proof at trial is not fatal if the information gives adequate notice to the defendant of the nature of the crime and does not cause surprise which is prejudicial to the defense. We agree with the Commonwealth that the information adequately apprised appellant of the crime of conspiracy in the beating death of Edward Polec. "The information should be read in a common sense manner, rather than being construed in an overly technical sense." *Commonwealth v. Badman*, 398 Pa.Super. 315, 324, 580 A.2d 1367, 1371 (1990).

5. The trial court instructed the jury as follows:

The Defendants in this case are on trial before you on Informations charging them with Criminal Homicide and Conspiracy relating to the death of Edward Polec and as to Mr. Pinero and Mr. Alexander, Aggravated and Simple Assault and Conspiracy relating to John Atkinson and as to Mr. Johnson, Aggravated Assault and Conspiracy and Recklessly Endangering Another Person relating to Richard Stuber.

Notes of testimony, 1/31/96 at 39.

Appellant additionally raises anew the issues he presented before the panel. Because our grant of rearrangument vacated any disposition of those issues by the panel with respect to appellant, we will address those claims and the Commonwealth's counterarguments. As near as can be gleaned from appellant's Statement of Questions and Argument Headings in his brief, these additional issues are as follows: [6]

THE PROSECUTOR ENGAGED IN PROSECUTORIAL MISCONDUCT WHEN HE REFERRED TO A CO–DEFENDANT'S CONFESSIONS DURING HIS OPENING STATEMENT WHICH HE NEVER INTRODUCED AT TRIAL AND SUBSEQUENTLY MADE REFERENCES TO THE STATEMENT DURING HIS CLOSING ARGUMENT.

---

Following the court's instruction on the degrees of murder, the court then stated:

Conspiracy which is the next crime on your verdict sheet. Conspiracy is charged as to each Defendant relating to the death of Mr. Polec and a second Conspiracy charge as to the Defendants Pinero and Alexander and Johnson, as to the assaults on Mr. Atkinson and Mr. Stuber. Again, Pinero and Alexander as to Mr. Atkinson and Mr. Johnson as to Mr. Stuber.

*Id.* at 53.

The court then defined the elements of conspiracy. There seems little question that as to Edward Polec, the jury only considered the charge of criminal conspiracy to commit murder. At no time, and consistent with the defense presented at trial, was there any objection lodged regarding the nature of the crime involving Edward Polec. Therefore, we admit some confusion as to the trial court's remarks at sentencing as set forth in footnote 3. Appellant states in his brief that it is significant that the jury asked for instructions on the meaning of conspiracy on three different occasions. While the court did restate the elements of the crime for the jury, a reading of the charge and supplemental instructions leaves no doubt that the only conspiracy charge against all of the defendants in the death of Edward Polec was conspiracy to commit murder.

6. The Commonwealth argues that because appellant's counsel did not specifically object at trial, appellant has waived any challenge to the Commonwealth's alleged misconduct during closing argument. However, defense counsel asserts that objections by other counsel for the co-defendants were to be considered objections for all defendants. We will address the issues presented.

THE PROSECUTOR ENGAGED IN A SERIES OF ACTS WHICH CONSTITUTE PROSECUTORIAL MISCONDUCT DURING HIS CLOSING TO THE JURY THE CUMULATIVE EFFECT OF WHICH IS TO DENY JOHNSON A FAIR AND IMPARTIAL TRIAL.

THE TRIAL COURT ERRED BY NOT GRANTING A MISTRIAL WHEN THE DEFENSE COUNSEL REQUESTED SAME DURING THE PROSECUTOR'S CLOSING ARGUMENT.

THE ACTIONS AND COMMENTS OF THE TRIAL COURT DEMONSTRATED BIAS AND PREJUDICE REQUIRING A NEW TRIAL OR A RE-SENTENCING HEARING FOR JOHNSON.

THE ONLY SUBSTANTIVE OFFENSE IN WHICH JOHNSON WAS CHARGED INVOLVING EDWARD POLEC WAS MURDER. HE WAS FOUND NOT GUILTY. THE CONSPIRACY INFORMATION CHARGED NOTHING ELSE.

We now turn to the question of whether the evidence was sufficient as a matter of law to support a guilty verdict for conspiracy. Specifically, appellant argues that the Commonwealth failed to present evidence that appellant shared any intent to murder, or that appellant entered into any agreement to kill the victim.

■ In evaluating a challenge to the sufficiency of the evidence, we are to view all of the evidence admitted at trial in the light most favorable to the verdict winner, along with any reasonable inferences to be drawn therefrom. We must then determine whether the evidence was sufficient to have permitted the trier of fact to find that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Nicotra*, 425 Pa.Super. 600, 603, 625 A.2d 1259, 1261 (1993). The facts and circumstances presented at trial need not preclude every possibility of innocence. *Id.* "Both direct and circumstantial evidence can be considered equally when assessing the sufficiency of the evidence." *Commonwealth v. Price*, 420 Pa.Super. 256, 260, 616 A.2d 681, 683 (1992) (citation omitted).

Conspiracy is defined, in relevant part, as follows:

(a) **Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

. . . .

(e) **Overt Act.**—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuant of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S.A. § 903.

■ "To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Rios*, 546 Pa. 271, 283, 684 A.2d 1025, 1030 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1825, 137 L.Ed.2d 1032 (1997), citing 18 Pa.C.S.A. § 903. This overt act need not be committed by the defendant; it need only be committed by a co-conspirator. *Commonwealth v. Finn*, 344 Pa.Super. 571, 574, 496 A.2d 1254, 1256 (1985).

'The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished.' *Commonwealth v. Keefer*, 338 Pa.Super. 184, 190, 487 A.2d 915, 918 (1985). 'Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent.' *Commonwealth v. Sattazahn*, 428 Pa.Super. 413, 422, 631 A.2d 597, 602 (1993) [*appeal denied*, 539 Pa. 270, 652 A.2d 293 (1994)].

' "An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." ' *Commonwealth v. Kennedy,* 499 Pa. 389, 395, 453 A.2d 927, 929–930 (1982), quoting *Commonwealth v. Strantz,* 328 Pa. 33, 43, 195 A. 75, 80 (1937). Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation.' *Commonwealth v. Woodward,* 418 Pa.Super. 218, 226, 614 A.2d 239, 243 (1992).

*Commonwealth v. Swerdlow,* 431 Pa.Super. 453, 458, 636 A.2d 1173, 1176–1177 (1994) (internal quotations and additional citations omitted). "The conduct of the parties and the circumstances surrounding their conduct may create 'a web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt." *Commonwealth v. McKeever,* 455 Pa.Super. 604, 609, 689 A.2d 272, 274 (1997) (citation omitted.) Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy. *Commonwealth v. Soto,* 693 A.2d 226, 229–230 (Pa.Super.1997), *appeal denied,* 550 Pa. 704, 705 A.2d 1308 (1997).

▆▆▆ Under 18 Pa.C.S.A. § 2502(c), third-degree murder encompasses all forms of murder which do not constitute first-degree murder (intentional killing) or second-degree murder (killing committed during the perpetration of a felony). In the context of third-degree murder, the Commonwealth need not establish a specific intent to kill, or even a specific intent to harm the victim. The Commonwealth need only establish a killing with malice, *i.e.,* the death of another brought about by an intentional act which indicates a wickedness of disposition, hardness of heart, wantonness, cruelty, recklessness of consequences, or a mind lacking regard for social duty. *Commonwealth v. Young,* 494 Pa. 224, 227, 431 A.2d 230, 232 (1981) (malice found where defendant pointed loaded gun at victim and gun discharged, even if it were fired accidentally and defendant meant only to scare the victim); *Commonwealth v. Seibert,* 424 Pa.Super. 242, 251, 622 A.2d 361, 365–66 (1993), *appeal denied,* 537 Pa. 631, 642 A.2d 485 (1994). Malice is established where the defendant's intentional act indicates that the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm. *Seibert, supra* at 250, 622 A.2d at 364. Malice may be inferred from all of the circumstances surrounding the defendant's conduct, and may be inferred from the use of a deadly weapon on a vital part of the body. *Commonwealth v. Cruz–Centeno,* 447 Pa.Super. 98, 106, 668 A.2d 536, 540 (1995), *appeal denied,* 544 Pa. 653, 676 A.2d 1195 (1996).

▆▆▆ We find that the Commonwealth's circumstantial evidence amply establishes that appellant was guilty of conspiracy to commit third-degree murder. Appellant knew throughout the night of November 11, 1994 that his cohorts from the Abington group were planning to commit violent attacks on members of the Fox Chase group. Appellant expressed his personal intent to commit violence by "curbing" someone. Moreover, he personally participated in the attacks on the Fox Chase group throughout the night. Finally, and most damning, appellant personally furnished deadly weapons (baseball bats) with which his group could carry out the violence that night. Under these circumstances, we do not hesitate to find that appellant possessed and shared an intent to act intentionally and with malice, *i.e.,* hardness of heart, cruelty, wantonness, or with a conscious disregard of an unjustified and extremely high risk that his actions might cause death or serious bodily harm. Next, appellant's conduct on the night in question demonstrated a tacit *agreement* to commit such intentional and malicious acts. As the overt act requirement of the conspiracy charge (the beating of Edward Polec) is undisputed, we find the evidence sufficient to find appellant guilty of conspiracy to commit third-degree murder.

We find support for this position in *Commonwealth v. La,* 433 Pa.Super. 432, 640

A.2d 1336 (1994), *appeal denied*, 540 Pa. 597, 655 A.2d 986 (1994). In that case, a verbal dispute broke out between two groups of men in a Philadelphia playground. Members of defendant La's group told him to go to his house and procure knives for the impending fight between the two groups. La went to his home, retrieved several knives, and returned to the field. By this point, the dispute appeared to have subsided. However, La removed a meat cleaver from the bag and dropped the remaining knives on the ground. Members of La's group then ran to the bag, picked up the knives, and attacked the other group. La participated in the melee. During the fight, members of La's group stabbed and killed one David Reilly. La was not personally involved in the killing. La was convicted of, *inter alia*, criminal conspiracy and third degree murder. On appeal, La argued that the trial court erred by instructing the jury that appellant could be found guilty of conspiracy to commit murder if it found that he had and shared the intent to commit an aggravated assault. He argued that "he must have had a shared intent to kill before he can be convicted of conspiracy to commit murder." *Id.* at 449, 640 A.2d at 1345.

We rejected this argument, reasoning that "despite the fact that an individual co-conspirator did not contemplate a killing, where such killing is a natural and probable consequence of a co-conspirator's conduct, murder is not beyond the scope of the conspiracy." *Id.* (citations omitted). This principle is applicable here. As a conspirator in a plan to commit violent attacks with baseball bats on members of the Fox Chase group, appellant is chargeable with conspiracy to commit third degree murder because death is a natural and probable consequence of such an attack, even if he did not personally participate in the killing. *See also id.* ("each conspirator is criminally responsible for the actions of his co-conspirator, provided it is accomplished in the furtherance of the common design"); *cf. Commonwealth v. Bigelow*, 416 Pa.Super. 449, 455, 611 A.2d 301, 303–04 (1992) (evidence sufficient to convict defendant of third-degree murder based on conspiracy theory of liability where defendant entered into agreement to attack victim, even if defendant did not wield the weapon which caused death).

Cases cited by appellant are inapposite. *See Commonwealth v. Menginie*, 477 Pa. 156, 160, 383 A.2d 870, 872 (1978) (reversing driver's conviction for conspiracy to commit voluntary manslaughter when passenger in the back seat shot the victim; "there is no evidence that [driver] encouraged, acquiesced in, or even knew that the person in the rear [seat] had a gun, or that he intended to use it"); *Commonwealth v. Wilson*, 449 Pa. 235, 238, 296 A.2d 719, 721 (1972) (reversing conviction for voluntary manslaughter when Wilson's friends stabbed and killed someone with whom Wilson had been engaged in a barroom brawl; Commonwealth presented no evidence that Wilson invited his friends to join the struggle, or "that he encouraged, acquiesced in, or was even aware of the use of the knife"); *Sattazahn, supra* at 424, 631 A.2d at 603 (reversing conviction for conspiracy to commit third degree murder and conspiracy to commit aggravated assault in the absence of evidence that co-felon shared criminal intent to commit violent attack).

In contrast, appellant here not only knew of his friends' plans to commit violent attacks with deadly weapons on the night of November 11th, but actually expressed agreement with those plans by supplying deadly weapons for the attacks. This is plainly not a case (such as *Menginie* and *Wilson, supra*) where appellant had no expectation that a minor scuffle would unexpectedly explode into murder.

■ Appellant next argues that the prosecutor committed misconduct when, during his opening and closing statements, he referred to a confession made by co-defendant Thomas Crook to police shortly after Polec's death, without ever introducing that confession at trial. In his opening statement, the Commonwealth's attorney stated:

Thomas Crook comes into the Detective Headquarters on November 15th, four days after Eddie Polec was beaten, three days after he died, and he is with his girlfriend and his mother, I believe, and he initially tells the detectives essentially what I have told you, up to Saint Cecilia's, but he says, 'I punched him in the back.'

Notes of testimony, 1/10/96 at 61–62. The court denied a defense motion for a mistrial on this issue, reasoning that it had previously instructed the jury that opening statements are not evidence, and that the jury "cannot expect that counsel will, necessarily, prove what they say they intend to prove." (Notes of testimony, 1/25/96 at 9.) Appellant argues that failing to introduce the statement during trial was fundamentally unfair and prevented appellant from exercising his constitutional right to confrontation. (Appellant's brief at 16–17, citing *Commonwealth v. Wilson*, 485 Pa. 409, 402 A.2d 1027 (1979).)

▉ Appellant's reliance on *Wilson* is misplaced. Here, the Commonwealth did not allude to a confession by *appellant*; therefore, the rationale of *Wilson* is inapplicable. Next, because the *Wilson* court declined to base its decision on the right of confrontation (*Id.* at 411, 402 A.2d at 1028), we cannot agree that under *Wilson* a violation of confrontation rights occurred here. In any event, to the extent that appellant argues that the Commonwealth should have introduced Crook's statement against appellant, we must disagree. As appellant himself recognizes, under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), in joint criminal trials a defendant's statement is admissible only against that defendant, not against any co-defendants.

*Commonwealth v. Miles*, 545 Pa. 500, 510, 681 A.2d 1295, 1300 (1996), *cert. denied,* ––– U.S. –––, 117 S.Ct. 1472, 137 L.Ed.2d 684 (1997).[7]

▉ Appellant next argues that the district attorney committed misconduct in its closing argument on several occasions which individually and collectively require a new trial. The decision to grant a mistrial is within the sound discretion of the trial court. This remedy is an extreme one, and is required "only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial." *Commonwealth v. Montgomery*, 533 Pa. 491, 497–98, 626 A.2d 109, 112–113 (1993). A prosecutor's closing remarks must be limited to facts in evidence and legitimate inferences therefrom. *Commonwealth v. Colson*, 507 Pa. 440, 465, 490 A.2d 811, 824 (1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). A prosecutor's comments are not evidence. *Commonwealth v. Gibson*, 547 Pa. 71, 95, 688 A.2d 1152, 1164 (1997), *cert. denied,* ––– U.S. –––, 118 S.Ct. 364, 139 L.Ed.2d 284 (1997). The jury was so instructed. The prosecutor may properly comment on the evidence and is permitted to do so with reasonable oratorical flair. *Commonwealth v. Banks*, 450 Pa.Super. 555, 562, 677 A.2d 335, 339 (1996), *appeal denied,* 548 Pa. 613, 693 A.2d 585 (1997). The prosecu-

7. The Commonwealth submits that the decision not to introduce Crook's confession at trial was based on subsequent trial court rulings which resulted in the statement's being substantially redacted. After reviewing the record, we find the following. In their closing statements, counsel for Crook and Pinero both alluded to the fact that the Commonwealth promised in its opening argument to produce Crook's confession but failed to do so. (Notes of testimony, 1/29/96 at 57–59 (Crook's counsel); notes of testimony, 1/30/96 at 23 (Pinero's counsel).) In his closing statement, District Attorney Casey responded as follows: "I am going to tell you [what happened to Crook's statement], because they asked that. Early on, before you were assembled or formed as a jury, there is a requirement, under the law, that under certain circumstances, statements must be changed." (Notes of testimony, 1/30/96 at 79.) Defense counsel objected. At a sidebar, District Attorney Casey argued that he should be able to explain why he did not introduce Crook's statement, given that defense counsel had raised the topic. After lengthy discussion, the court granted the defense objection, saying, "I do not

think that it is a good idea to talk about something that is not in evidence, and the fact of redaction is not evidence to this jury, period." (*Id.* at 85.) The trial court properly sustained the defense objection, and prohibited the prosecutor from explaining to the jury why the statement was redacted pursuant to *Bruton, supra.* After the sidebar was complete, District Attorney Casey said, "They knew the reason. They knew the reason. I told them the reason again, and they know it." (*Id.* at 86.) Defense counsel renewed their objections, which were sustained, and District Attorney Casey was ordered to "move on" with his argument. (*Id.*) Under these circumstances, where defense counsel specifically questioned why the Commonwealth failed to introduce Crook's statement, we find no error in the prosecutor's attempt to at least begin to answer the question. We also find no prejudice arising from the prosecutor's rather vague remark that "they knew the reason." In any event, we find appellant's argument that the Commonwealth "continued its misconduct" to be inadequately developed to form a basis for relief.

tion must have a degree of latitude in advocating its position because "we must not lose sight of the fact that the trial is an adversary proceeding." *Id.* (citation omitted). On review, comments by the prosecutor during closing arguments must be considered in the context of the entire summation. *Id.* A prosecutor's language during closing argument will not constitute reversible error "unless its unavoidable effect would be to prejudice the jury, forming in their minds, fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Id.* at 561, 677 A.2d at 338 (citation omitted).

First, appellant argues that the district attorney committed misconduct in his closing argument by referring to Crook's statement to police which had not been introduced at trial. For the reasons set forth in footnote 7 *supra*, we find no misconduct on the part of the district attorney in this respect.

■ Appellant next argues that the following statement by the prosecutor regarding character testimony offered by Pinero and appellant was improper:

> Character testimony, indeed, is substantive testimony, and two of the Defendants, Nicholas Pinero and Carlo Johnson, put on character testimony. Nicholas Pinero put his mother and father on, and what are they going to say about their son? Defendant Johnson put on an array of people from his church, from his neighborhood, and his father. What do we know about character testimony? Well, I have fallen into a trap. Actually, it is not character testimony. It is properly called reputation evidence. The day before he betrayed our country, Benedict Arnold could have had as his reputation witnesses George Washington and the other founders of our country, because they thought that his reputation was impeccable. Do you recall that terrible thing in California, with Daniel Keating, who ran a savings and loan, and stole money from widows, children and everyone who put money in that savings and loan? Daniel Keating, the day before he was arrested and convicted, and before he went to jail in California—the day before he was arrested, he could have had

> five United States Senators as his character witnesses, because he had given them upwards of $300,000 each to interfere with the investigation of his bank. So, just because people come in and say that you have a good reputation does not mean that you have a good reputation.

Notes of testimony, 1/30/96 at 91–92. The court overruled Pinero's counsel's objection, reasoning that "this is argument." (*Id.* at 92.)

■ We agree with the trial court that the prosecutor's discussion of character and reputation testimony was permissible argument. "The Commonwealth [is] permitted to ask the jury to consider the source of that character testimony in assessing the witnesses' credibility and the weight to be given to their testimony." *Gibson, supra* at 96, 688 A.2d at 1165. The remarks "permissibly pointed out that relatives are more likely to be biased or interested in the outcome of a case than are nonrelatives." *Commonwealth v. Van Cliff*, 483 Pa. 576, 586, 397 A.2d 1173, 1178 (1979), *cert. denied*, 441 U.S. 964, 99 S.Ct. 2412, 60 L.Ed.2d 1070 (1979). Moreover, the district attorney did not impugn appellant's character, but simply encouraged the jury to view reputation evidence from people close to him with a critical eye. *Id.* Finally, particularly in the Benedict Arnold example, the prosecutor properly pointed out the inherent limits of reputation evidence: people with admittedly outstanding reputations may nevertheless act inconsistently with that reputation. Therefore, such remarks were not improper and did not constitute prosecutorial misconduct.

Citing the following examples, appellant next argues that the prosecutor improperly inflamed the passions and prejudices of the jury:

■ What the attorney for Defendant Khathavong wants you to believe is that the police told Tom Ruth to say that Defendant Khathavong, Bou Khathavong, was jumping up and down, saying, 'I'm so psyched, I could kill someone.' Well, of course, he has to have an explanation for that, so it has to be those dirty lying cops.

Where is the evidence of that? It is gossamer fantasy, but it is part of the big lie. **It is part of the big lie. It was perfected by Hitler, and Goebbels, and that is: Throw enough mud at the walls, say it loudly, and long enough, and somebody will believe it.** So, that is what they are doing. It is the big lie.[8]

. . . .

■ The Defense pulled a tactic with Jason Mascione which is—in the sterile atmosphere of the courtroom—and I say that because we have decorum, even though we have not necessarily all of the time conducted ourselves with decorum, including me, but Judge Greenspan presided over a fair courtroom, with decorum, where there are rules and people follow the rules. Out there, on November 11th, 1994, these Defendants weren't subject to that decorum. They weren't sitting there neatly attired, as they are now. **It was that crew, that blood-lusting crew—**

Notes of testimony, 1/30/96 at 110, 142 (emphasis added).

■ Let me say something about the nature of a baseball bat that is different from other deadly weapons. If you were to go over here, and have a gun, and shoot that gun at someone, maybe you would hit them, depending on how good a shot you are; maybe you wouldn't, but it is a distance. They are way back there. There is an impersonal quality to killing with a gun. Make no mistake, it is a deadly weapon; it is a deadly weapon, but what is there about a baseball bat? You can't very well stand here and kill somebody with a baseball bat. You can throw it, and if you are lucky, it will hit somebody, but I would not

even argue that you have the intent to kill if it were thrown. It is fortuitous where it would land. I would argue that that is Third Degree Murder, and we will get to that, but I wouldn't argue that you had the intent to kill, but with a baseball bat, with a baseball bat —

At some point during this speech, the prosecutor struck a cardboard box with a baseball bat. (*Id.* at 166–167.) Immediately after defense counsel objected to the prosecutor's striking the box with the bat, he added, "There is something about a baseball bat that just personifies malice, and the intent to kill. You can't do it from a distance. You have to be up close." (*Id.* at 167.)

The trial court sustained defense objections to these comments, but denied all motions for a mistrial. The jury reconvened the day after the prosecutor completed his closing argument. Immediately before instructing the jury on the law of the case, the court issued the following cautionary instruction:

In his argument, Mr. Casey may have referred to, I believe, blood lust, Hitler, Goebbels, the big lie, and predators. Any such mentions of any such words by Mr. Casey was improper and must be stricken by you and totally ignored by you; further, insofar as Mr. Casey attempted to demonstrate the noise of the bat, that is not evidence in this case and also must be stricken. . . .

Notes of testimony, 1/31/96 at 19.

■■■ First, as to the "big lie" remark, we recognize that the prosecution was attempting to respond to defense arguments that the prosecution had manufactured evidence and manipulated witnesses. We also find that the reference to the "big lie," when explained to be a propaganda ploy, does not in and of itself exceed the bounds of oratorical flair.[9] However, specific comparisons be-

---

8. We note that not long after the prosecutor made the "big lie" comment, the court called a brief recess to give the jury a rest. (*Id.* at 118.) At that point, the court held a sidebar conference. Counsel for Pinero objected to "equat[ing] the testimony of witnesses to Hitler and Goebbels." (*Id.* at 120.) District Attorney Casey said, "Not the witnesses; the Defense Attorneys uttering the big lie." (*Id.*) The court responded, "stay

off of the Nazi analogies, please." (*Id.*) Immediately after the sidebar concluded, Mr. Casey apologized to the jury "insofar as my conduct may have been off-putting to you, or offensive to you." (*Id.* at 121.)

9. Webster's Ninth New Collegiate Dictionary defines "big lie" as "a gross distortion of the truth used esp. as a propaganda tactic."

tween counsel's tactics and those of Hitler and Goebbels were reprehensible, even in the heat of closing arguments. Nevertheless, we find no reversible error in that the trial court carefully and forcefully instructed the jury to disregard such comments. *Commonwealth v. Carter*, 537 Pa. 233, 265, 643 A.2d 61, 77 (1994), *cert. denied*, 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995). Next, we find that the "blood-lusting crew" remark does fall within the limits of oratorical flair in a case such as this, where the defendants' actions may be fairly characterized as such. *See Miles, supra* at 512, 681 A.2d at 1301–02 (permissible under the circumstances to compare defendants to group of animals attacking prey *en masse*). Moreover, any prejudice was cured by the court's instruction. *Carter, supra.* Finally, the record is insufficient to determine the prejudicial effect, if any, of the baseball bat demonstration, which we note bore a reasonable relation to the circumstances of the case and to the prosecutor's argument regarding malice. Any prejudice was speculative and certainly cured by the court's instruction. *Id.*

 Appellant's final argument concerning the Commonwealth's closing argument is that the cumulative effect of the prosecutor's comments and actions was so prejudicial as to have deprived him of a fair trial. However, because the challenged incidents of misconduct were either proper actions on the part of the Commonwealth or were cured by the trial court's instructions, we cannot accept appellant's cumulative-effect argument. "No number of *failed* claims may collectively attain merit if they could not do so individually." *Miles, supra* at 517, 681 A.2d at 1303 (citation omitted). Therefore, the trial court did not abuse its discretion in denying appellant's motion for a mistrial based on prosecutorial misconduct during closing arguments.

 Appellant next argues that the court showed bias in favor of the Commonwealth. He notes that the court, in overruling the Commonwealth's objections, often commented, "I will allow [the testimony] for whatever it's worth." (Appellant's brief at 29.) This editorializing allegedly "reflected [the court's] feelings as to the worth of the

defense's efforts." (*Id.*) The court also allegedly showed its bias by denying appellant's motions for acquittal, and by allowing the district attorney to make "outlandish remarks" in closing argument "with limited or non-existent admonishment." (*Id.* at 29–30.) Apparently, appellant argues that the court should have recused itself from the case (*id.* at 29, reciting standard of review for recusal); however, appellant has failed to identify where in the record he made such a motion for recusal. Because appellant presents no evidence that he sought a recusal at any time before the jury rendered its verdict, we find the issue waived. *Commonwealth v. Edmiston*, 535 Pa. 210, 229–30, 634 A.2d 1078, 1088 (1993). Even if it were not waived, we find this argument wholly insufficient to establish bias on the part of the trial court. *Commonwealth v. Miller*, 541 Pa. 531, 553, 664 A.2d 1310, 1321 (1995) (adverse rulings, without more, do not demonstrate bias), *cert. denied*, 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996); *Commonwealth v. Berrigan*, 369 Pa.Super. 145, 168–70, & n. 9, 535 A.2d 91, 103–104 & n. 9 (1987) (defendant must show that the court's bias might have infected the jury or deprived him of a fair trial; telling a defendant on the stand that he has "a tendency to ramble on" does not establish bias), *appeal denied*, 521 Pa. 609, 557 A.2d 341 (1989); *cert. denied*, 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 173 (1989).

Appellant also alleges that the court showed its bias against appellant in the sentencing phase by sentencing him to the maximum lawful term, imposing maximum sentences on all defendants "without distinction or realistic consideration of their life differences," commenting that the defendants got whatever breaks they were going to get from the jury, and using "spurious reasoning" to justify the maximum sentence, such as commenting that despite having extensive family support, appellant did not perform well in school. (Appellant's brief at 30–31.) Appellant seeks "a hearing on the fairness of his sentence." (*Id.* at 31.)

 First, we find that since appellant failed to move to recuse the trial judge after the facts allegedly establishing bias came to his attention, this issue is waived.

Next, appellant's allegations do not go to the issue of *bias* per se, but rather merely implicate the discretionary aspects of appellant's sentence. However, to the extent that appellant is challenging the discretionary aspects of his sentence, we find the issue waived because he has not filed a separate, concise statement indicating why a substantial question exists that the sentence involved was inappropriate under the Sentencing Code. *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987); Pa.R.App.P. 2119(f). The only issue which even arguably implicates bias is the court's comment that the defendants got all the breaks they were going to get from the jury. Even if the issue is not waived, we are unwilling to hold that a court demonstrates recusable bias merely by commenting that it is unwilling to treat the defendant with lenience.

■■■ The sixth and final section of appellant's brief is an extended, free-form discussion titled: "The only substantive offense for which Johnson was charged, involving Edward Polec, was murder. He was found not guilty. The conspiracy bill of information alleged that the object of the conspiracy was the 'beating' of Edward Polec." (Appellant's brief at 31.) In his Statement of the Questions Involved, appellant frames this issue as whether the jury's guilty verdict on the conspiracy offense should have been set aside because appellant was acquitted of all underlying crimes. (*Id.* at 3.) We reject the argument as framed in the Statement of Questions Involved. Conspiracy to commit a crime and the underlying crime itself are two entirely separate offenses with separate elements required for each. *Commonwealth v. Miller*, 469 Pa. 24, 27 n. 5, 364 A.2d 886, 887 n. 5 (1976). Thus, the mere fact that appellant was acquitted of the underlying crime is irrelevant to his guilt on the conspiracy charge.

Finally, to the extent that this issue is presented to highlight any variance between the crime charged and the crime tried, we find any objection waived. To the extent that appellant is seeking to reargue his sufficiency claim on the conspiracy charge, as noted above we find no merit.

For all of the above reasons, we affirm the judgment of sentence.

KELLY, J., files a concurring statement.

DEL SOLE and MUSMANNO, JJ., concur in the result.

SCHILLER, J., files a dissenting opinion which is joined by POPOVICH, J.

KELLY, Judge, concurring:

I wholeheartedly join the majority in its disposition of this case and the reasoning in its support. I add only one comment. Pennsylvania law makes clear that the omission of a Rule 2119(f) statement in an appellate brief waives a discretionary aspects of sentencing issue if the Commonwealth objects to the omission. *Commonwealth v. Saranchak*, 544 Pa. 158, 675 A.2d 268 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 695, 136 L.Ed.2d 617 (1997). The reviewing Court, however, may overlook the omission in those instances when the Commonwealth fails to object and the presence or absence of a substantial question can easily be determined from Appellant's brief. *Id.* This case, in my view, does not represent one of those exceptional instances. Accordingly, to the extent that Appellant's "bias" issue may be construed as a challenge to the discretionary aspects of his sentence, I must agree that Appellant has waived the issue.

SCHILLER, Judge, dissenting.

I respectfully dissent. The panel decision was not based on our inability to address the sufficiency of the evidence to convict appellant of conspiracy to commit third degree murder. Appellant was never charged with conspiracy to commit murder. Instead, the criminal information charged appellant with "conspiracy to *beat* Eddie Polec". While this criminal information could be interpreted as conspiracy to commit aggravated assault, the panel remanded solely for the purpose of obtaining clarification from the trial court as to the grade of the offense and the reasons for the court's sentence. Since the jury convicted appellant only of "conspiracy", we do not know what crime he conspired to commit, which is the reason we remanded for clarification.

Moreover, while the panel noted that, in the interest of justice, we would not preclude appellant from raising a future sufficiency of the evidence claim once the trial court clarified which subsection of the aggravated assault statute appellant violated, we specifically stated that, "[b]ased on our review of the record, the evidence presented at trial clearly supports a verdict that [appellant] was guilty of conspiracy to violate one or more subsections of the statute." Accordingly, I would remand this case for a clarification of appellant's criminal conspiracy conviction and re-sentencing following that clarification.

POPOVICH, J., joins in this dissent.