J-S34024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| MATTHEW CORDERO | |
| Appellant | No. 3319 EDA 2016 |

Appeal from the Judgment of Sentence Dated September 30, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000654-2015

BEFORE: BOWES, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY SOLANO, J.:          **FILED SEPTEMBER 27, 2017**

Appellant Matthew Cordero appeals from the judgment of sentence following his convictions for first degree murder, robbery, conspiracy to commit robbery, and possession of an instrument of crime.[1] We affirm on the basis of the trial court's opinion.

The trial court aptly summarized the underlying facts. **See** Trial Ct. Op., 12/9/16, at 2-6. On September 13, 2013, Appellant and his girlfriend, Krista McDevitt, conspired to lure the decedent, Joseph Britton (McDevitt's former boyfriend), to a location in the Frankford neighborhood of Philadelphia, where Appellant and McDevitt planned to rob him. McDevitt

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a), 3701(a)(1)(i), 903, and 907(a), respectively.

successfully lured Britton to Frankford, but when she met Appellant to tell him, Appellant became jealous and enraged, approached Britton (who was waiting for McDevitt in a borrowed car), and struck him three or four times with an aluminum baseball bat, killing him. Appellant searched the car and Britton's pockets for drugs and money, but retrieved only $1. Appellant discarded the car keys and then boasted to others of the crime and warned them not to report him to the police.

At trial, in addition to various law enforcement officers and the medical examiner, the Commonwealth presented the testimony of McDevitt,[2] Howard Hilgendorff (Britton's roommate, who lent Britton his car that day), Ian Pawlowic (Appellant's friend, who lent Appellant his baseball bat when Appellant confided his plans for the robbery, and who helped Appellant search the car following the murder), and Daquan Calloway (who, at thirteen years old, heard Appellant announce his intention to rob Britton, observed Britton's body immediately following the murder, heard Appellant warn him and his (Calloway's) mother against reporting Appellant to the police, witnessed his (Calloway's) mother falsely tell a 911 operator and the responding law enforcement officers that a group of four males had committed the murder, and who had himself given a false statement to the police which he recounted at trial).

---

[2] McDevitt was not an eyewitness to the murder.

During his closing argument, in order to demonstrate the force used in the murder, the prosecutor "struck a cardboard [file storage] box resting on the prosecutor's table four times with a baseball bat, warping and slightly cracking the top of the box." Trial Ct. Op. at 11. Appellant moved for a mistrial based on the prosecutor's conduct, which the trial court denied.

On September 30, 2016, the jury convicted Appellant of the aforementioned charges. Trial Ct. Op. at 1. Appellant received a mandatory sentence of life imprisonment without parole for the first-degree murder charge, and lesser concurrent sentences for the remaining counts. *Id.* Appellant filed no post-sentence motions, but filed a timely notice of appeal, and raises the following issues:

I.  Is Appellant entitled to an arrest of judgment with regard to his convictions for first degree murder, robbery, criminal conspiracy to commit robbery and possessing instruments of crime since the evidence is insufficient to sustain the verdicts of guilt as the Commonwealth failed to sustain its burden of proving Appellant's guilt beyond a reasonable doubt?

II. Is Appellant entitled to a new trial based upon the trial court's denial of his motion for a mistrial made as a result of prejudicial misconduct of the prosecutor during his summation?

Appellant's Brief at 4 (answers by the court below omitted).

**Sufficiency of the Evidence**

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. When reviewing a sufficiency claim the court

is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

As a reviewing court, we may not weigh the evidence or substitute our judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence.

*Commonwealth v. Chambers*, 157 A.3d 508, 512 (Pa. Super. 2017) (ellipses, citations, and formatting omitted).

Appellant broadly argues that "there was no evidence presented to show that Appellant acted with the specific intent to kill, malice, ill will or premeditation, that he entered into an agreement to commit a crime, that he removed any property from someone with force or the threat of force or that he used or possessed a weapon or instrument of crime." *See* Appellant's Brief at 18. More specifically, he complains that there was no physical or scientific evidence presented by the Commonwealth to establish Appellant's involvement, *id.*; the Commonwealth failed to prove Appellant's identity as one of the perpetrators, *id.* at 22; no eyewitness testimony was presented, *id.*; and the testimony presented by the Commonwealth "was contradictory, inconsistent,[3] and biased" — in particular, Appellant asserts that the testimony of Krista McDevitt and Ian Pawlowic was "tainted" because they had received lesser sentences in their own cases in exchange for their testimony at Appellant's trial, *id.* at 22, 25-26.

---

3 Appellant does not specify which testimony was contradictory or inconsistent.

- 4 -

Moreover, Appellant contends that the allegations "did not evidence a specific intent to kill, but an individual who was out of control and who was under the influence of a sudden and intense passion stemming from belief that Krista McDevitt shared drugs with or had sex with the victim." Appellant's Brief at 22. Appellant asserts that "the Commonwealth did not rebut evidence showing that Appellant acted in the heat of passion at the time the victim was killed. At most, Appellant's actions constitute voluntary manslaughter." *Id.* at 25.

After a review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Barbara A. McDermott, we conclude that there was sufficient evidence presented to establish beyond a reasonable doubt that Appellant committed the above crimes. *See* Trial Ct. Op. at 6-10 (reviewing the elements of each crime of which Appellant was convicted and concluding (1) that specific intent to kill was proven by the evidence establishing that Appellant "ambushed the unsuspecting decedent as he waited in his car and employed a deadly weapon, an aluminum baseball bat, to strike him in his vital head and neck three to four times, killing him instantly," that Appellant had done so after purposefully travelling to the decedent's location in a fit of rage, and that Appellant boasted about the murder afterwards; (2) that conspiracy to commit robbery was established when McDevitt testified that she and Appellant had "concocted a scheme to support their drug habits by luring her

former friends and paramours to Philadelphia and robbing them," and had done so with Britton; (3) that Appellant "manifested his intent to rob decedent by obtaining a baseball bat and lying in wait to ambush the decedent outside Wissinoming Park," "clearly attacked the decedent with the dual intent to murder him and rob him of his belongings," and "[a]fter the murder, . . . returned to ransack the vehicle . . . [and] took control of the decedents' car keys and a single one-dollar bill, completing the robbery"; and (4) that possessing an instrument of a crime was established by the evidence that "[o]n the day of the murder, [A]ppellant acquired the baseball bat from Pawlowic and a pair of socks he used as gloves . . . [Appellant] struck the decedent with the bat three to four times with the intent to kill him for taking drugs and having sex with McDevitt and to rob him of any money or drugs he had on his person").

In addition, we note that Appellant's arguments relate mainly to the weight, and not the sufficiency, of the evidence. *See Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003) ("A sufficiency of the evidence review . . . does not include an assessment of the credibility of the testimony offered by the Commonwealth. . . . Such a claim is more properly characterized as a weight of the evidence challenge" (citations omitted)).

Finally, regarding Appellant's argument that the evidence establishes the lesser crime of voluntary manslaughter,[4] we find that Appellant made no argument at trial regarding voluntary manslaughter, did not request a jury charge on provocation, and did not raise the issue in his Rule 1925(b) statement. We therefore hold that Appellant waived that aspect of his claim. *See* Pa.R.A.P. 302 (claims may not be raised for the first time on appeal); Pa.R.A.P. 1925(b)(4)(vii) (issues not raised in the 1925(b) statement are waived).

## Motion for Mistrial/Prosecutorial Misconduct

In reviewing an assertion of prosecutorial misconduct, our inquiry centers on whether the defendant was deprived of a fair trial, not deprived of a perfect trial. It is well-settled that a prosecutor must be free to present his or her arguments with logical force and vigor. Comments grounded upon the evidence or reasonable inferences therefrom are not objectionable, nor are comments that constitute oratorical flair. Furthermore, the prosecution must be permitted to respond to defense counsel's arguments. Consequently, this Court has permitted vigorous prosecutorial advocacy provided that there is a reasonable basis in the record for the prosecutor's comments. A prosecutor's remarks do not constitute reversible error unless their unavoidable effect would prejudice the jurors, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. Finally, we review the allegedly improper remarks in the context of the closing argument as a whole.

---

[4] A successful "heat of passion" defense reduces a homicide charge to voluntary manslaughter. *See* 18 Pa.C.S. § 2503(a)(1) ("A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by . . . the individual killed").

*Commonwealth v. Sneed*, 45 A.3d 1096, 1109–10 (Pa. 2012) (quotation marks, brackets, and citations omitted).

Appellant argues that "the prosecutor's demonstration in front of the jury went beyond permissible oratorical flair, and was done in a flamboyant, erratic, or frightening manner. The striking of the cardboard filing box could only have been designed to appeal to the jury's prejudices." Appellant's Brief at 32. Appellant complains that the medical examiner "did not testify to the amount of force used to strike the victim," and that "[t]here was no testimony presented by the Commonwealth to indicate that the victim was struck in the same manner as the prosecutor struck the cardboard filing box. As a result, the prosecutor's demonstration had the effect of impermissibly introducing evidence that was not presented at trial." *Id.* at 32-33.

After a thorough review, we agree with the trial court's conclusion on this issue as well. *See* Trial Ct. Op. at 11-12 (reviewing the law applicable to a prosecutor's statements and concluding that "[u]ncontroverted evidence," including the testimony of the medical examiner, "permitted the jury to make a reasonable inference that [Appellant] struck the decedent three to four times with a baseball bat while using a significant amount of force," that the Commonwealth's demonstration mirrored the evidence at trial, and that there was no basis for a finding of prejudice). We note that in a similar case, *Commonwealth v. Johnson*, 719 A.2d 778 (Pa. Super. 1998) (*en banc*), *appeal denied*, 739 A.2d 1056 (Pa. 1999), the defendant was on trial for

committing first degree murder with a baseball bat, and the prosecutor, during his closing statement, struck a cardboard box with a baseball bat. *Id.* at 789. There, as here, the trial court denied the defendant's motion for a mistrial, and we affirmed, stating that "the record is insufficient to determine the prejudicial effect, if any, of the baseball bat demonstration, which . . . bore a reasonable relation to the circumstances of the case and to the prosecutor's argument regarding malice." *Id.* at 789-90.[5]

Thus, we affirm on the basis of the trial court's opinion, and the parties are instructed to attach a copy of the trial court's opinion of December 9, 2016, to any future filing that references this Court's decision.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary


Date: *9/27/2017*

---

[5] In **Johnson**, we also noted that "[a]ny prejudice was speculative and certainly cured by the court's instruction" to the jury, which was: "insofar as [the prosecutor] attempted to demonstrate the noise of the bat, that is not evidence in this case and also must be stricken." 719 A.2d at 789-90. Although here, no instruction was given in response to the demonstration, we note that the jury was instructed that the closing statement of the prosecutor was not to be construed as evidence. **See** N.T., 9/29/16, at 13, 100.