J-S06004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JARED OAKES, | |
| Appellant | No. 1798 EDA 2013 |

Appeal from the Judgment of Sentence Entered January 14, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011721-2011

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:            **FILED JANUARY 20, 2015**

Appellant, Jared Oakes, appeals from the judgment of sentence of an aggregate term of three years' probation, imposed after he was convicted, following a nonjury trial, of possession with intent to deliver (PWID) and criminal conspiracy.  Appellant challenges the sufficiency and weight of the evidence to sustain his convictions.  We affirm.

The trial court set forth the facts of this case as follows:

> At trial, the Commonwealth presented the testimony of Philadelphia Police Officers Greg Barber and Rick Williams. Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the police officer[s'] testimony established the following.  On July 29, 201[1], with the aid of a confidential informant ("CI"), Officer Barber began a narcotics investigation in the area of 5800 Race Street in Philadelphia, Pennsylvania.  On August 3, 2011[,] the Officer and

---

[*] Former Justice specially assigned to the Superior Court.

his team set up surveillance at 147 North 59th Street, dialed the telephone number provided by the CI and remained present while instructing the CI to engage the male who answered the call in a conversation related to the sale of narcotics, "preferably crack cocaine[."] The male who answered the call directed the CI to the 200 block of North Salford Street. Officer Barber continued his surveillance at 147 North 59th Street, while backup officers, William and Francis, were directed to the 200 block of North Salford Street to observe the CI make this "controlled drug buy[."] Prior to the buy, police searched the CI for narcotics, contraband, and currency (with negative results) and provided him with $40.00 pre-recorded buy money to use for the purchase.

While under constant surveillance, the backup officers observed the CI come in contact with the operator of a black Cadillac that had driven into the area. The officers observed the CI hand the driver, later identified as co-defendant James Scruggs ("co-defendant"), the $40.00 prerecorded buy money in exchange for small objects. Within minutes, the CI returned to the officers and turned over four blue-tinted Ziploc packets, each containing an off-white[,] chunky substance, believed to be crack cocaine, that later tested positively for cocaine base. Officer Barber, who stayed at the previous location but remained in constant radio contact with the officers at the scene, instructed the backup officers to maintain their surveillance on the black Cadillac before stopping it at the 5900 block of Sansom Street.

The operator of the vehicle, co-defendant James Scruggs, was placed in custody and police recovered from his person $147.00, a black wallet containing a PA driver's license, one set of keys and three (3) cellular telephones, one verified as matching the telephone number previously provided to and dialed by police to make the call for the CI initiating the sale. The officers had also taken [Appellant] out of the passenger seat and confiscated from him a cell phone, $1,195.00 in US currency, in addition to the $40.00 in prerecorded buy money that was given to the CI for the narcotics purchase. No drugs were confiscated from [Appellant] or [his] co-defendant and a search of the vehicle resulted in no findings or confiscations of any contraband.

Trial Court Opinion (TCO), 6/13/14, at 2-4 (citations to the record and emphasis omitted).

Based on this evidence, the court convicted Appellant of PWID and criminal conspiracy. Appellant was subsequently sentenced to concurrent terms of three years' probation for each offense. He filed a timely notice of appeal, as well as a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Herein, he raises two questions for our review:

> I. Was the evidence presented at trial sufficient to find [] Appellant guilty beyond a reasonable doubt of [PWID] … and [c]riminal [c]onspiracy?
>
> II. Did the [t]rial [c]ourt abuse its discretion by holding that the verdicts of guilty against Appellant were [not] against the weight of the evidence?

Appellant's Brief at 3.

Appellant first argues that the evidence presented at trial was insufficient to sustain his convictions. To begin, we note our standard of review:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. ***Commonwealth v. Moreno***, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. ***Commonwealth v. Hartzell***, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno, supra*** at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

In regard to both of his convictions, Appellant essentially maintains that the evidence proved only his mere presence at the scene when Scruggs sold narcotics to the CI. More specifically, Appellant argues that "[t]he fact that [he] was present for the sale by his co-defendant to the informant, and then was subsequently in possession of the pre-recorded buy money, without further evidence, is insufficient to find beyond a reasonable doubt that he was a member of a criminal conspiracy to sell narcotics, or that he constructively possessed the narcotics sold by the co-defendant to the informant." Appellant's Brief at 7.

In concluding that the evidence was sufficient to sustain Appellant's convictions, the trial court analogized the facts of this case to those in *Commonwealth v. McCall*, 911 A.2d 992 (Pa. Super. 2006). There, police officers observed McCall and his co-defendant, Spencer Rogers, standing "about five feet away from a drainpipe" on a Philadelphia street. *Id.* at 994. As the officers watched, four different individuals approached Rogers and handed him money, after which Rogers walked to the drainpipe, removed items believed to be drugs, and handed the suspected drugs to the buyer. *Id.* While these transactions were occurring, McCall "stood watch, looking up and down the length of [the] [s]treet." *Id.* Following two of the four sales, Rogers handed the proceeds to McCall. *Id.* When officers subsequently arrested Rogers and McCall, Rogers had $64 on his person,

while McCall possessed $1,508, which was "mostly in small denominations."

***Id.***

Based on this evidence, we affirmed McCall's convictions for conspiracy and PWID. We stated:

> As our Court has … explained with respect to the agreement element of conspiracy:
>
>> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.
>
> ***Commonwealth v. Johnson***, 719 A.2d 778, 784–85 (Pa.Super.1998) (*en banc*).
>
> The totality of the evidence taken in a light most favorable to the Commonwealth was sufficient to sustain [McCall's] convictions for PWID and conspiracy to deliver. Even though [McCall] did not physically handle the drugs transacted, he clearly took an active role in the illicit enterprise. [McCall] was observed working as a lookout … during three of the transactions in question, and he received money from his cohort seller immediately after two sales. Indeed, when arrested, [McCall] possessed a copious amount of money ($1,508) in small

denominations consistent with drug sale proceeds, while, in comparison, the seller possessed only $64.

In contrast to the passive bystander or acquaintance merely present at the scene of a crime, roles which will not sustain a conviction for conspiracy, [McCall] actively participated in several crucial respects to enable his cohort to sell crack cocaine to numerous buyers. It was thus appropriate for the fact-finder to infer an agreement between [McCall] and his cohort to deliver crack cocaine based upon [McCall's] participation in the enterprise carrying out the deliveries. Accordingly, we conclude that all three elements to a criminal conspiracy were sufficiently proven to sustain [McCall's] conviction for conspiracy to deliver crack cocaine.

Because [McCall] is criminally liable for the actions of his coconspirators, it follows that the evidence sufficed to convict him of PWID as well. Given the evidence of his conspiracy with Mr. Rogers, it is not exculpatory that [McCall] never actually handled the drugs or received the buy money directly from buyers when his co-conspirator Mr. Rogers did. As noted above, all conspirators are liable for the actions of other conspirators. *Id.* at 785. As [McCall's] co-conspirator clearly delivered the illicit drugs in question, [McCall's] conviction for PWID was proven beyond a reasonable doubt. [McCall's] sufficiency challenge, therefore, is without merit.

*McCall*, 911 A.2d at 996 -997.

In this case, the trial court concluded that "[t]he facts in *McCall* are sufficiently similar to the facts in the instant matter" to uphold Appellant's convictions for PWID and conspiracy. TCO at 6. The court emphasized that "[l]ike the appellant in *McCall*, [Appellant] in the instant case was not only present for the sale of the drugs, but also immediately received the $40.00 proceeds from the sale, while already in possession of a copiously large amount of U.S. currency - $1,195.00 – while the actual seller in this case only possessed $147.00." *Id.*

Appellant, however, argues that *McCall* is "factually distinguishable" from the present case because he did not take an 'active role' as did McCall. Appellant's Brief at 9. Appellant emphasizes that he did not possess the phone used to set up the sale with the CI, he did not drive to the location, the CI spoke only to Scruggs and handed Scruggs the money, and Appellant "gave nothing to Scruggs prior to the transaction." *Id.* at 10. Appellant also points out that police did not find any drugs on Scruggs, Appellant, or in the car, thus "indicating that *Scruggs* made this single trip to sell four packets of crack." *Id.* (emphasis added).

Appellant further argues that the facts of this case are comparable to those in *Commonwealth v. Mercado*, 617 A.2d 342 (Pa. Super. 1992). We summarized the evidence presented in *Mercado* as follows:

> [T]he police observ[ed] … [Mercado], leaning out the third floor window of a house where a planned "buy" was made, watching a drug transaction transpire [at the door to the home] between police and [Mercado's] alleged co-conspirator; the observation of [Mercado] and his alleged co-conspirator in the same position fifteen minutes later, at which time there was no sight of criminal dealing; and the presence of [Mercado] between the first and second floor of the house at the time police uncovered contraband in [an unlocked] third floor apartment.

*Id.* at 344. We concluded that this evidence was insufficient to sustain Mercado's convictions for PWID or criminal conspiracy. In regard to the conspiracy conviction, we noted:

> [Mercado] was not observed handling any money or communicating in any way with Colon. After the police searched the premises, they found no drugs on [Mercado], nor was [he] in the room where the drugs were found. [Mercado's] mere

- 7 -

presence at the location of the drug transaction is not sufficient to implicate him in a criminal conspiracy.

*Id.* at 346.

After careful consideration of the facts of Appellant's case, we conclude that his conduct falls somewhere in between that of the appellants in *McCall* and *Mercado*. McCall's active role in the conspiracy was more pronounced than Appellant's, as officers observed McCall acting as a lookout for his cohort during the drug transactions. However, we reject Appellant's assertion that he was merely present at the scene, as was Mercado. Instead, Appellant was in close proximity to the drug sale as it took place, he immediately received the proceeds of that sale, and he possessed a large quantity of cash (much more than that possessed by Scruggs) on his person at the time of his arrest. The totality of these circumstances convinces us that Appellant's case is more analogous to *McCall*, and it was reasonable for the court to infer that Appellant and Scruggs had a "common understanding … that a particular criminal objective be accomplished[,]" as well as "a shared criminal intent." *McCall*, 911 A.2d at 996 (citation omitted). Thus, as in *McCall*, we conclude that Appellant's criminal conspiracy conviction was supported by sufficient evidence. Consequently, Appellant is also criminally liable for Scruggs' sale of narcotics to the CI, which supports his conviction for PWID.

Appellant next challenges the weight of the evidence to support his convictions.

A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Houser*, 18 A.3d 1128, 1135-1136 (Pa. 2011) (citations and internal quotation marks omitted).

Here, the trial court rejected Appellant's weight argument, instead concluding that "[t]he evidence outlined above plainly established that [Appellant] both conspired to and did constructively possess drugs with the intent to deliver." TCO at 10. While Appellant argues that the evidence "indicates that Appellant's co-defendant, James Scruggs, acted alone in selling drugs to the informant[,]" for the above-stated reasons, we disagree. Appellant's Brief at 12. Therefore, we ascertain no abuse of discretion in the trial court's denial of Appellant's challenge to the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/20/2015