J.S17038/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM SHONTAY JOHNSON, | : | |
| | : | |
| Appellant | : | |
| | : | No. 1335 WDA 2015 |

Appeal from the Judgment of Sentence August 3, 2015
in the Court of Common Pleas of Indiana County Criminal Division
at No(s): CP-32-CR-0001271-2014

BEFORE: GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                **FILED FEBRUARY 19, 2016**

Appellant, William Shontay Johnson, appeals from the judgment of sentence entered in the Indiana County Court of Common Pleas following his conviction by a jury of knowingly or intentionally possessing a controlled substance,[1] manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance,("PWID")[2] and conspiracy to deliver a controlled substance.[3]  His attorney, Robert F. Manzi, Esq. ("Counsel"), has

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(16).

[2] 35 P.S. § 780-113(a)(30).

[3] 18 Pa.C.S. § 903(c).

filed an **Anders**[4] petition for leave to withdraw. Counsel's brief presents four issues: the sufficiency of the evidence, the weight of the evidence, a due process violation as there were no African American jurors, and the Commonwealth's failure to disclose an alleged plea offer to his co-defendant entered into three days after her testimony. We affirm the judgment of sentence and grant Counsel's petition to withdraw.

We glean the facts from the jury trial. On June 17, 2014, Trooper Becky Fabich contacted Bryan Maines, a confidential informant ("CI") who had worked with her on "different cases from before." N.T., 5/18/15, at 14, 31. Mr. Maines testified that he contacted Appellant and arranged to purchase drugs from him. **Id.** Appellant was to meet Maines in the alley by his house. **Id.** at 17. Maines testified "if I walk my dog around the alley it would look less conspicuous than me just waking back and forth." **Id.** at 19. When Maines was in the alley, Appellant and "a female driver pulled up beside" him. **Id.** The exchange of money for drugs took place in the car. **Id.** at 20. Maines went to the front porch of his house and another officer arrived and Maines gave him the drugs. **Id.** at 21. Maines was strip searched before and after the exchange with Appellant. **Id.** at 16, 25. Maines got the money for the transaction from the officers. **Id.** at 26. He

---

[4] **See Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981).

gave the troopers ten bags of heroin. *Id.* at 27. Maines testified that he "wasn't offered any deal" for his testimony at trial. *Id.* at 33.

Natawsha Durand testified that she was in the car with Appellant on the date of the incident. *Id.* at 42. The vehicle was a Chrysler 200. *Id.* at 43. Appellant offered her $300 if she would drive the car "and if we got pulled over for me to tuck the drugs in and he would make sure I was okay while I was in jail." *Id.* at 46. Appellant only held the drugs "when he was selling to people." *Id.* at 47. She drove when they went to meet the person in the alley. *Id.* at 48. Ms. Durand testified that Appellant "had rolled his window down and pulled the dope out of his pocket and gave I guess the CI a bun and as he gave him a bun, he gave the money, handed me the drugs, told me to hide it, then we left." *Id.* A bun is "10 stamp bags of heroin." *Id.* at 49. Appellant placed the money in his pocket. *Id.*

A few blocks away from where the exchange took place, they were pulled over at a red light. *Id.* Ms. Durand was asked if "any sort of deal had been offered for [her] in order to testify in this case" and she responded "[n]o, sir." *Id.* at 50. She testified that she was incarcerated at the time of her testimony in this case. *Id.* at 55. The District Attorney asked to have her bail reduced so that she could be released from jail after testifying in the instant case. *Id.*

Trooper Karen Lynn Orsini testified that she was employed by the Pennsylvania State Police in the "vice unit conducting drug, narcotic,

prostitution details." *Id.* at 80. On June 17th, she was "assisting Trooper Fabich with a buy . . . ." *Id.* She went with Trooper Christopher Leon "to watch the informant purchase drugs from a suspect." *Id.* at 82. They went in separate vehicles. *Id.* at 83. She saw the CI walk onto his front porch. *Id.* She "observed the informant sort of standing around the area of the residence with his dog and then [she] saw a vehicle pull up and [meet] with the informant." *Id.* at 84. The vehicle was "like a tannish Chrysler." *Id.* Two people were in the vehicle. *Id.* She "saw the informant approach the passenger's side window." *Id.* She "saw the informant reach in the vehicle . . . ." *Id.* at 85. "The vehicle proceeded to drive away and the informant proceeded to walk down the alley out of my sight." *Id.* "Myself and Trooper Leon . . . followed the vehicle." *Id.* A marked car came between her and the vehicle and stopped the vehicle involved in the incident. *Id.* She did not participate in the stop. *Id.* at 86. Trooper Orsini was "involved in searching Miss Durand after she was arrested[.]" *Id.* at 87. Drugs "were found in her anus[.]" *Id.* Appellant was also at the station at that time. *Id.* at 89.

Trooper Leon testified that he was "currently a retired Pennsylvania State Police Officer" who had worked in the vice unit. *Id.* at 90. On June 17th, he was working in Indiana County with Trooper Rebecca Fabich, Corporal Ronald Zorna, and Trooper Orsini. *Id.* at 91. They met at the Indiana Borough Station. *Id.* "Trooper Fabich had made contact with an

informant," Maines, who "had arranged to meet with a subject in order to purchase heroin." *Id.* Trooper Leon went to the informant's house, brought him back to the police station and strip searched him. *Id.* Nothing was found on the informant. *Id.* at 92. The purpose of the strip search was "[t]o ensure that he does not bring any drugs or money into a deal." *Id.* at 92-93. Trooper Leon testified that he "took position in the parking lot where [he] could see up the alley to Mr. Maines' front door." *Id.* at 93. He "had a clear view of the whole alleyway and his apartment." *Id.* at 94.

Trooper Leon testified Maines went with Corporal Zorna to the Rite Aide parking lot, the original location for the transaction. *Id.* at 93. The location changed and Corporal Zorna brought Maines to Maines' residence. *Id.* at 93-94. Corporal Zorna then left. *Id.* at 95. Trooper Leon observed a "beige Sebring or Chrysler [come] down the alley, . . . stopped at the intersection and Mr. Maines approached the passenger side of that vehicle." *Id.* The vehicle drove off and Trooper Leon contacted Trooper Fabich who was following the vehicle. *Id.* at 96. Trooper Fabich identified the passenger of the vehicle as Appellant. *Id.* Trooper Leon contacted Trooper Jonathan Andrew Lindsay "to try to get the car stopped." *Id.* " . . . Trooper Fabrich was in contact with the Indiana Borough Police. They came up behind me, took position in front of me, at that point stopped the vehicle . . . . . Trooper Lindsay . . . also got in on the traffic stop. I stayed behind. After everyone was secured, I walked up to the vehicle and that was it." *Id.*

at 96-97. Following the stop, "[b]oth the driver and passenger were pulled out of the vehicle searched and then removed from the scene and brought back to Indiana Borough Police Station." *Id.* at 97.

Corporal Zorna, supervisor of the Vice Unit in Troop A, testified that on June 17th he was assisting Trooper Fabich with a purchase of heroin that took place in Indiana. N.T., 5/19/15, at 4. His "role was going to be to drive the informant to the location where the drug buy was going to take place and to do surveillance and watch him." *Id.* at 4. He drove the informant to his apartment and the informant got his dog without going into the apartment. *Id.* at 5-6. Corporal Zorna gave the informant $120 in cash for the drug buy. *Id.* at 6. He drove the informant to the alley and then went to the Rite Aide parking lot. *Id.* at 7. The Corporal could see where the informant was standing with his dog. *Id.* After several minutes, a "beige colored Chrysler came up the alley . . . and stopped in front of his apartment where he was standing and he walked up to the passenger's side of the car and he was leaning in the window." *Id.* at 8. After the beige car left, the Corporal "pulled up next to him. He said he made the deal and he had the heroin. I reached out. He handed me a pack. It was a bundle of heroin . . . ." *Id.* The informant let his dog back into the home. *Id.* at 9. The Corporal drove the informant to the Indiana Barracks and he did a strip search. *Id.* at 9. He gave the drugs to Trooper Fabich. *Id.*

Trooper Lindsay testified that on June 17th he "was notified in communication with Trooper Fabich that [he] was to make a traffic stop on a Chrysler sedan. And then [he] identified the vehicle and made a traffic stop on that said vehicle." *Id.* at 12. The passenger of the vehicle was placed into custody. *Id.* at 13. He identified the passenger as Appellant. *Id.*

Trooper Fabich testified that she was assigned to the Troop A Vice Unit. *Id.* at 22. She contacted Mr. Maines on June 17th "and asked him if he could set up anyone that evening . . . he got back to me and stated he could set up [Appellant.]" *Id.* at 23. "Trooper Orsini and Trooper Leon went out and sent up surveillance on the area. [She] along with Corporal Zorna followed him into the area and then I set up surveillance on the other end of the alley." *Id.* at 25-26. She testified that Appellant

> along with a black female had past me, at which time I was on the phone with Trooper Leon and advised him what was going on. The car was coming down the alley. I identified [Appellant] as it past. I went around and positioned myself . . . to look up the alley, at which time when I came around, they had parked and Mr. Maines was walking towards the passenger side.

*Id.* at 27. The car that she saw was a beige Chrysler 200. *Id.* at 28. An Enterprise Rental Agreement "was seized out of the vehicle after we did a search warrant on it." *Id.* Appellant was "[t]he renter on the agreement . . . ."[5] *Id.* Trooper Fabich identified Appellant as the passenger in the vehicle.

---

[5] The rental agreement was admitted into evidence without objection. *Id.* at 29.

*Id.* at 29. She stated that she saw the informant go "up to the passenger side, reach[ ] his hand in, an exchange took place, pulled his hand out and walked away." *Id.* at 30. She "called Trooper Lindsay and advised him which way, the direction of the vehicle and Trooper Leon would be getting in touch with with him." *Id.* at 31. Trooper Fabich then met Corporal Zorna with the CI and followed them "back to the state police barracks, at which time Corporal Zorna handed [her] the bundle of heroin . . . ." *Id.* She testified that Trooper Lindsay had given her "5 $20 bills that were located on [Appellant's] lap, those 5 $20 bills match the serial numbers that we had given to the confidential informant to make the purchase of the heroin." *Id.* at 34.

Following his conviction, on August 3, 2015, Appellant was sentenced to three to ten years' imprisonment for delivery of a controlled substance, three to ten years' imprisonment for conspiracy, and six to twelve months' imprisonment for possession of a controlled substance. All sentences were to run concurrently. On August 5, 2015, the court amended the sentencing order to provide that the offense of possession merged with the offense of delivery. Therefore, no further penalty was imposed for possession of a controlled substance. Appellant did not file post trial or post sentence motions.

This timely appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal[6] and the trial court filed a responsive opinion. Counsel filed an **Anders** petition and brief with this Court.

Initially, we examine whether Counsel complied with the requirements of **Anders**, **supra**, and **McClendon**, **supra**, as clarified by the Pennsylvania Supreme Court in **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

---

[6] We note that in this appeal, Counsel opted to file a Rule 1925(b) statement and not a Pa.R.A.P. 1925(c)(4) statement of intent to file an **Anders** brief. The note to this subsection states, "Even lawyers seeking to withdraw pursuant to the procedures set forth in **Anders** . . . and **Commonwealth v. McClendon**, . . . 434 A.2d 1185 ([Pa.] 1981) are obligated to comply with all rules, including the filing of a Statement." Pa.R.A.P. 1925(c)(4), *note*.

Instantly, Appellant raised the following issues in his Rule 1925(b) statement:

> 1. The evidence presented at trial was not sufficient to support the verdict against [Appellant].
>
> 2. The verdict by the jury is against the weight of the evidence presented.
>
> 3. Due Process violation as there were no African American jurors on the jury, therefore [Appellant] could not be judged by a jury of his peers.
>
> 4. Discovery and Due Process violation in that the Prosecution failed to disclose a plea offer that the co-defendant entered into only three days after her testimony.

Appellant's Concise Statement of Matters Complained of on Appeal, 9/11/15.

> This Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the appellant].
>
> Prior to withdrawing as counsel on a direct appeal under **Anders**, counsel must file a brief that meets the requirements established by our Supreme Court in **Santiago**. The brief must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.
>
> **Santiago**, 978 A.2d at 361. Counsel also must provide a copy of the **Anders** brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worth of the court[']s attention in addition to the points raised by counsel in the **Anders** brief."

**Commonwealth v. Orellana**, 86 A.3d 877, 879-80 (Pa. Super. 2014) (some citations omitted). If counsel complies with these requirements, "we will make a full examination of the proceedings in the lower court and render an independent judgment [as to] whether the appeal is in fact 'frivolous.'" **Id.** at 882 n.7 (citation omitted).

In the instant appeal, Counsel's **Anders** petition avers the following.

- 10 -

"[A]fter carefully and conscientiously examining the entire record, Counsel has determined that the appeal of this case is wholly frivolous." Counsel's Pet. to Withdraw as Counsel, 11/30/15, at ¶ 2. He notified Appellant of his request to withdraw, provided a copy of the brief and petition to withdraw, and advised him of his right to proceed *pro se* or with new counsel. Counsel attached a copy of his letter to Appellant. Furthermore, Counsel's brief sets forth the facts and procedural history of this case, pertinent law, and a discussion on why Appellant's issues are meritless. He again concludes this appeal is frivolous. In light of the foregoing, we hold Counsel has complied with the requirements of **Santiago**. **See Orellana**, 86 A.3d at 879-80. We note Appellant has not filed a *pro se* or counseled brief. We thus examine the record to determine whether the issues on appeal are wholly frivolous. **See id.** at 882 n.7.

As a prefatory matter, we consider whether the sufficiency of the evidence issue is waived. In his Rule 1925(b) statement, Appellant avers the evidence presented at trial was not sufficient to support the verdict. In **Commonwealth v. Williams**, 959 A.2d 1252 (Pa. Super. 2008), the appellant's

> 1925(b) statement language d[id] not specify how the evidence failed to establish which element or elements of the three offenses for which [he] was convicted. To name certain witnesses who failed to establish the Commonwealth's case says nothing about how the evidence was insufficient. Which elements of which offense were unproven? What part of the case did the Commonwealth not prove?

In any given case, there may be one or more witnesses whose testimony fails to prove the charges. Indeed, perhaps all the witnesses fail to do so. Very well. But how did they fail? What part of the offenses did the Commonwealth not establish? What element is it that this Court is to analyze on appeal?

**If [an a]ppellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal.**

**Id.** at 1257 (emphasis supplied and citation omitted).

Where the Rule 1925(b) statement "**does not specify the allegedly unproven elements**," the issue is waived. **Id.** Instantly, Appellant's Rule 1925(b) statement does not specify the allegedly unproven elements upon which the evidence was insufficient. Therefore, we could find the issue is waived. **See id.** However, in **Commonwealth v. Laboy**, 936 A.2d 1058 (Pa. 2007), the Pennsylvania Supreme Court found that in a relatively straightforward drug case, this Court did not have to find waiver based upon the Rule 1925(b) statement. **Id.** at 1060. In the case at bar, we decline to find the issue waived. **See id.**

"A claim challenging the sufficiency of the evidence is a question of law." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000).

[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the

- 12 -

> evidence believed by the fact-finder was sufficient to support the verdict. . . .

> * * *

> When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt.

*Commonwealth v. Ratsamy*, 934 A.2d 1233, 1235-36, 1237 (Pa. 2007) (citations and quotation marks omitted). "In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. . . . The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Buford*, 101 A.3d 1182, 1186 (Pa. Super. 2014) (citation omitted), *appeal denied*, 114 A.3d 415 (Pa. 2015).

The Crimes Code defines the offense of knowingly or intentionally possessing a controlled substance as follows:

> Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. § 780-113(a)(16).

Manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance is defined as follows:

> Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

Conspiracy is defined as follows:

> **(a) Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a)(1).

The crime of possession of a controlled substance "is a lesser-included offense of both possession with the intent to deliver a controlled substance, and delivery of a controlled substance." ***Commonwealth v. DeLong***, 879 A.2d 234, 237 n.2 (Pa. Super. 2005) (citations omitted). PWID is established when the Commonwealth "proves beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it." ***Commonwealth v. Little***, 879 A.2d 293, 297 (Pa. super. 2005).

> The term delivery, as used in [section 780-133(a)(30)], is defined by the Act as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic

whether or not there is an agency relationship." 35 P.S. § 780-102. Thus, for a defendant to be liable as a principal for the delivery of a controlled substance there must be evidence that he knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so.

***Commonwealth v. Murphy***, 844 A.2d 1228, 1233-34 (Pa. 2004).

Finally, "[t]o sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Hennigan***, 753 A.2d 245, 253 (Pa. Super. 2000). In ***Commonwealth v. Johnson***, 719 A.2d 778 (Pa. Super. 1998) (*en banc*), this Court opined:

An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation.

***Id.*** at 785 (citations and quotation marks omitted).

In the case at bar, the evidence of record supports Appellant's convictions. Trooper Fabich contacted the CI to arrange to purchase drugs and the CI testified he contacted Appellant. Corporal Zona gave the CI $120 to buy the heroin. Ms. Durand testified she was in the car with Appellant on June 17th. She saw him take the heroin out of his pocket and give it to the

CI. Trooper Orsini went with Trooper Leon to watch the informant purchase the drugs. She testified drugs were found in Ms. Durand's anus. Trooper Leon saw the CI approach the passenger side of the vehicle in the alley. After the beige Chrysler left the alley, the CI gave Corporal Zorna a bundle of heroin. Trooper Lindsey made the traffic stop of the vehicle involved in the incident and he placed Appellant into custody.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we find it is sufficient to establish all of the elements of the offenses beyond a reasonable doubt. *See Ratsamy*, 934 A.2d at 1237; *Murphy*, 844 A.2d at 1233-34; *Buford*, 101 A.3d at 1186; *Little*, 879 A.2d at 297; *Hennigan*, 753 A.2d at 253; *Johnson*, 719 A.2d at 784-85. We agree with counsel's determination that Appellant's sufficiency challenge is frivolous.

Next, we consider whether the weight of the evidence claim is waived. In *Commonwealth v. Sherwood*, 982 A.2d 483 (Pa. 2009), the Supreme Court opined:

> [The a]ppellant did not make a motion raising a weight of the evidence claim before the trial court as the Pennsylvania Rules of Criminal Procedure require. *See* Pa.R.Crim.P. 607(A).
>
> \* \* \*
>
> [An a]ppellant's failure to challenge the weight of the evidence before the trial court deprived that court of an opportunity to exercise discretion on the question of whether to grant a new trial. Because "appellate review of a weight claim is a review of the exercise of discretion, not

> of the underlying question of whether the verdict is against the weight of the evidence," **Commonwealth v. Widmer**, [ ] 744 A.2d 745, 753 ([Pa.] 2000), this Court has nothing to review on appeal. We thus hold that [the a]ppellant waived his weight of the evidence claim because it was not raised before the trial court as required by Pa.R.Crim.P. 607.

*Id.* at 494 (2009) (footnotes and some citations omitted). We reiterate that "we may not weigh the evidence and substitute our judgment for the fact-finder." **See Buford**, 101 A.3d at 1186. In the case *sub judice*, Appellant did not challenge the weight of the evidence before the trial court. Therefore, the issue is waived. **See id.**

Third, the **Anders** brief raises the issue of whether there was a due process violation as there were no African American jurors on the jury. Appellant avers that there were no African American jurors within the jury array, and therefore, Appellant is not claiming that specific African American jurors were excluded. **Anders** Brief at 17.

We consider whether this issue is waived. Pa.R.Crim.P. 625(B)(1)[7] provides:

> **(B) Challenge to the Array.**
>
> (1) Unless opportunity did not exist prior thereto, a challenge to the array shall be made not later than 5 days before the first day of the week the case is listed for trial of criminal cases for which the jurors have been summoned and not thereafter, and shall be in writing,

---

[7] We note that Pa.R.Crim.P. 630 was renumbered Rule 625 on July 7, 2015, effective October 1, 2015. Pa.R.Crim.P. 625, *note*.

> specifying the facts constituting the ground for the challenge.

Pa. R. Crim. P. 625. In the instant case, there were no written motions to the trial court challenging the jury array.[8] "By failing to timely challenge the jury array, appellant has waived any objection he may have had." *Commonwealth v. Jackson*, 486 A.2d 431, 436 (Pa. Super. 1984).[9] This issue is therefore waived. *See id.*

Lastly, the *Anders* brief raises the issue of whether there was a discovery and due process violation in that the prosecution failed to disclose a plea offer that Ms. Durand entered into only three days after her testimony. Our review of a claim of a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), is governed by the following principles:

> To establish a violation of *Brady*, a defendant is required to demonstrate: (1) evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant. *Commonwealth v. Lambert*, [ ] 884 A.2d 848, 854 ([Pa.] 2005); *see also Kyles v. Whitley*, 514 U.S. 419, 433–34, [ ] (1995) (evidence is material under *Brady*, and the failure to disclose it justifies setting aside a conviction, only where there exists

---

[8] The trial court found that "any challenge to the jury array would be waived" because "there were no written motions made to the trial court challenging the jury array." Trial Ct. Op., 10/8/15, at 9.

[9] We note that the *Jackson* Court refers to Pa.R.Crim.P. 1104(b). Rule 1104(b) is substantively the same as Rule 625(b). *See id.* at 436.

a reasonable probability that had the evidence been disclosed the result at trial would have been different.). Conversely, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." In determining whether a "reasonable probability" of a different outcome has been established, the "question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Thus, a "reasonable probability" of a different result is established when the government's suppression of evidence "undermines confidence in the outcome of the trial." Importantly, "in order to be entitled to a new trial for failure to disclose evidence affecting a witness' credibility, the defendant must demonstrate that the reliability of the witness may well be determinative of his guilt or innocence." In engaging in this analysis, a reviewing court is not to review the undisclosed evidence in isolation, but, rather, the omission is to be evaluated in the context of the entire record.

*Commonwealth v. Dennis*, 17 A.3d 297, 308-09 (Pa. 2011) (some citations omitted). "Mere conjecture as to an agreement between the prosecution and witness is insufficient to establish a *Brady* violation, however." *Commonwealth. v. Bomar*, 104 A.3d 1179, 1190 (Pa. 2014).

In the case at bar, the trial court opined:

Here, there is no evidence on the record that the co-defendant in this case was offered a deal to testify against [Appellant] or that there was a promise or understanding between the Commonwealth and the witness before the witness testified. The co-defendant in question, Natawsha Durand, testified on direct examination that no sort of deal had been offered to her for her testimony. On cross examination, Ms. Durand testified that no promises had been made to her for her testimony, nor had she received any benefits for her testimony in this case.

- 19 -

There was testimony elicited through cross examination that, after Ms. Durand testified at the preliminary hearing in this case, the Commonwealth made a motion to have her bail reduced, thereby allowing her to be released from prison. However, Ms. Durand further stated that there was no offer to have her bail reduced if she testified at the preliminary hearing and that she did not know the Commonwealth had made that bail reduction motion until she was released from jail later that day.

Thus, the only testimony presented on this issue consists of the witness denying any deal, promise, or understanding with the Commonwealth and that her bail was reduced after she testified at the preliminary hearing without her knowing the reduction would occur. Therefore, since there was testimony denying any promise or understanding, [Appellant] has only presented mere conjecture that there was a promise or understanding in place between the Commonwealth and Ms. Durand; given these circumstances, no **Brady** violation occurred.

Trial Ct. Op., 10/18/15, at 10-11 (citations omitted). We agree with the trial court's analysis, and thus agree with Counsel's determination that there is no merit to this claim. **See Bomar**, 104 A.3d at 1190; **Dennis**, 17 A.3d at 308-09.

Our independent review of the record reveals no other issues of arguable merit. **See Santiago**, 978 A.2d at 355 n.5; **Orellana**, 86 A.3d at 882 n.7. Accordingly, we grant counsel's petition for leave to withdraw and affirm the judgment of sentence.

Judgment of sentence affirmed. Counsel's petition for leave to withdraw granted.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2016