J-A05023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOSUE RODRIGUEZ | |
| Appellant | No. 456 EDA 2015 |

Appeal from the Judgment of Sentence October 10, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000337-2013

BEFORE:  OLSON, J., OTT, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                          **FILED May 11, 2016**

Josue Rodriguez appeals from the judgment of sentence imposed on October 10, 2014, in the Court of Common Pleas of Philadelphia County, after a jury convicted him of third-degree murder and conspiracy to commit third-degree murder.[1]  Rodriguez received an aggregate sentence of 17 to 40 years' incarceration.  In this timely appeal, Rodriguez claims that his conviction was against both the sufficiency and weight of the evidence, and that the trial court erred in giving the jury a **Fisher**[2] charge, regarding

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(c) and 903(c), respectively.

[2] **Commonwealth v. Fisher**, 80 A.3d 1186 (Pa. 2013).

conspiracy to commit third-degree murder. After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm.

We adopt the trial court's recitation of the underlying facts in this matter:

> At trial, the Commonwealth presented the testimony of Philadelphia Police Lieutenant Javier Rodriguez, Philadelphia Police Detective James Dunlap, Philadelphia Police Officers Robert Scarpello and Terrence Tull, Deputy Medical Examiner Dr. Marlon Osbourne, Keshea Lopez and Rosaura Torres-Sadler. [Rodriguez] testified on his own behalf and presented the testimony of Haisha Rivera. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.
>
> On July 23, 2012, at approximately 2:00 a.m., Angel Trinidad was walking down Cambria Street near the intersection with Kip Street in North Philadelphia. [Rodriguez] was standing at the corner of Kip Street and Cambria Street with his girlfriend, Haisha Rivera. While Trinidad was walking, Jose Suarez and approximately six other individuals, who were located further westbound on Cambria Street near Ella Street, called out to [Rodriguez] to "hold him" and "stop him," meaning Trinidad. Suarez and his companions were approaching from Ella Street at a run. [Rodriguez] then held Trinidad while the group ran up from Ella Street. Once the group arrived, the people in the group began beating Trinidad. [Rodriguez] joined in the attack on Trinidad, punching Trinidad at least twice. While Trinidad was being beaten, and while [Rodriguez] was participating in the attack, Suarez stabbed Trinidad with a pocket knife nineteen times. Suarez punctured Trinidad's lungs four times.
>
> After beating and stabbing Trinidad, Suarez, [Rodriguez], and their compatriots left the scene. Trinidad managed to walk to the middle of the 2900 block of Kip Street before collapsing on the sidewalk. Individuals on the street attempted to render aid to Trinidad and flagged down a police officer. Responding officers rendered assistance and Trinidad was transported to Temple Hospital, where he was pronounced dead at 2:54 a.m.

Police recovered video surveillance footage from a camera located at the Vargas Minimarket, which recorded the attack.

Trial Court Opinion, 5/18/2015, at 2-3 (citations to the certified record omitted).

Additionally, we have reviewed the video surveillance referred to in the trial court opinion, which shows both the prelude to the attack as well as the initial assault upon Trinidad.[3]

Rodriguez claims the evidence presented at trial was insufficient to support the verdict. Specifically, he argues there was no evidence to support his conviction for conspiracy to commit third degree murder. He continues, if he was not a co-conspirator in the murder, his conviction for murder must also fail.

Rodriguez argues the evidence produced at trial demonstrated he was not part of the original group that pursued Trinidad. Accordingly, he could not have been part of any plan by that group to attack or kill Trinidad. He only became involved when the group shouted, "Stop him." Rodriguez claims he acted as a Good Samaritan in helping detain Trinidad, who he

---

[3] This video was admitted into evidence and shown to the jury. We will relate the specifics of the video in our discussion of the sufficiency of the evidence.

- 3 -

believed had robbed members of the group.[4]  He claimed to have punched

Trinidad only when he thought he saw Trinidad produce a knife.

Initially, we note:

> The standard of review for claims of insufficient evidence is well-settled. With respect to such claims, we consider the evidence in the light most favorable to the Commonwealth as verdict winner. In that light, we decide if the evidence and all reasonable inferences from that evidence are sufficient to establish the elements of the offense beyond a reasonable doubt. We keep in mind that it was for the trier of fact to determine the weight of the evidence and the credibility of witnesses. The jury was free to believe all, part or none of the evidence. This Court may not weigh the evidence or substitute its judgment or that of the factfinder.

*Commonwealth v. Devries*, 112 A.3d 663, 667 (Pa. Super. 2015)

(citations omitted).

While the jury was free to believe Rodriguez's version of the events, it

was not required to believe Rodriguez.  We must review the evidence in the

light most favorable to the Commonwealth as the verdict winner.  In this

regard, we quote the able analysis of the Honorable Glenn B. Bronson, who

initially noted:

> To sustain a conviction for conspiracy, the Commonwealth was required to prove that [Rodriguez]:
>
> > (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared intent and, (3) an overt act was done in furtherance of the conspiracy.

---

[4] The group had six or seven members.

- 4 -

> ***Commonwealth v. Fisher***, 80 A.3d 1186, 1189-90 (Pa. 2013) *quoting* ***Commonwealth v. Rios***, 684 A.2d 1025, 1030 (Pa. 1996); see 18 Pa.C.S. § 903(a). Because in most conspiracy cases there is no direct evidence of either the defendant's criminal intent or of the conspiratorial agreement, "the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by 'the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.'" ***Commonwealth v. Murphy***, 844 A.2d 1228, 1238 (Pa. 2004) (*quoting* ***Commonwealth v. Spotz***, 716 A.2d 580, 592 (Pa. 1998)).
>
> Here, [Rodriguez] was convicted of conspiracy to commit third degree murder. Third degree murder is a killing committed with malice. Malice consists of "wickedness of disposition, hardness of heart, wantonness, cruelty, recklessness of consequences, or a mind lacking regard for social duty." ***Commonwealth v. Devine***, 26 A.3d 1139, 1146 (Pa. Super. 2011) (*quoting* ***Commonwealth v. Johnson***, 719 A.2d 778, 785 (Pa. Super. 1998), app. denied, 739 A.2d 1056 (1999)). The malice required for third degree murder does not require a specific intent to kill. It is sufficient if defendant "committed an intentional act, characterized by malice, that results in death, intended or not." ***Fisher***, 80 A.3d at 1191. A conspiracy to commit third degree murder is proven if the evidence establishes that the defendant agreed with one or more people to intentionally and maliciously attack the victim, without regard to the consequences of their acts, and as a result of their conduct, the victim dies. ***Id***., 80 A.3d at 1196.

Trial Court Opinion, at 4-5.

Keshea Lopez, a resident of the neighborhood who witnessed the attack, testified she heard the group of individuals, including Suarez, call out to Rodriguez to stop Trinidad. N.T. 8/5/2014 at 93. She then saw the group, including Rodriguez, begin to beat Trinidad. *Id*. at 95-96. She then saw Suarez stab Trinidad multiple times. *Id*. at 96-100. While Suarez was

stabbing Trinidad, she witnessed Rodriguez participating in the attack. *Id*. at 98.

The surveillance video showed Trinidad walking down Cambria Street and standing on the corner of Kip and Cambria Streets. Very shortly thereafter, Rodriguez approached Trinidad from the same direction Trinidad had arrived from. An unnamed individual also approached Trinidad from across Cambria Street. As they neared Trinidad, Rodriguez moved past Trinidad on Kip Street, preventing him from going further. At that time, the group approached and Suarez pulled something from either a back pocket or waistband and almost immediately began attacking Trinidad using what might be best described as a classic downward stabbing motion. During the attack, Rodriguez appears at one point to have held onto Trinidad while Suarez stabbed him. The group trapped Trinidad between a parked car and utility pole. Suarez continued to stab Trinidad while Rodriguez punched him in the head. As Trinidad broke free from the group and crossed Kip Street out of view of the camera, Rodriguez left with the group, following Trinidad. The events caught on the video show Rodriguez is an active participant in the attack on Trinidad. *See* Surveillance Video.

Although there was no testimony from any witness that the stabbing continued after Trinidad crossed the street and out of camera sight, the video showed approximately 12 stabs. The autopsy report showed Trinidad was stabbed 19 times. Accordingly, it may be inferred the stabbing

continued out of camera sight. According to witness testimony, the group dispersed shortly after leaving camera view and the police arrived shortly thereafter. Although fatally wounded, Trinidad refused to cooperate with the police or to identify his attackers.

Based upon this evidence, the trial court stated:

> [T]he evidence was sufficient to establish that [Rodriguez] intentionally participated in the group beating of Trinidad, joining Suarez and multiple other individuals, and assisted them by stopping Trinidad on the street and by punching him several times. The evidence also establishes that while [Rodriguez] was participating in this attack, Suarez stabbed Trinidad multiple times causing Trinidad's death. This was ample evidence from which a reasonable juror could conclude that [Rodriguez] was guilty of conspiracy to commit third degree murder. **See Fisher**, 80 A.3d at 1186, 1190-1196 (defendants properly convicted of conspiracy to commit third degree murder where they joined in a random beating of a man on a subway concourse who later died from an asthma attack caused by the beating.) No relief is due.

Trial Court Opinion, **supra**, at 6.[5]

Additionally, we note that "a conspiracy may be formed in a second and its existence may be very, very fleeting," **Commonwealth v.**

_____

[5] In its closing argument, the Commonwealth presented the jury with a list of evidence supporting Rodriguez's entry into a conspiracy (as well as evidence directed toward other aspects of his guilt). The list, which is supported by evidence of record, is enlightening: (1) Rodriguez is the first to approach Trinidad, (2) he blocks Trinidad from walking down Kip Street, (3) he moves closer to Trinidad as the stabbing begins, (4) he holds Trinidad's arm as he is being stabbed, (5) he is shoulder to shoulder with Suarez as the stabbing occurs, (6) he punches Trinidad as the stabbing continues, (7) he remains close as the assault continues, and (8) he follows along with the group after Trinidad crosses Kip Street to continue with the attack.

***Robinson***, 425 A.2d 748, 754 (Pa. Super. 1980), distinguished on other grounds, ***Commonwealth v. Thomas***, 879, A.2d 246 (Pa. Super. 2005), thus, there was no requirement that Rodriguez was part of the original group that was seeking Trinidad in order for him to be found to be a co-conspirator. Accordingly, we agree there was sufficient evidence to sustain the verdict.

Because Rodriguez's argument regarding sufficiency of the evidence centers on his status as a conspirator, we need not provide a detailed analysis of Suarez's actions. Our recitation of evidence makes it amply clear that a jury could find Trinidad's death was the result of a malicious attack, sufficient to support the third-degree murder charge.

Next, Rodriguez claims his conviction was against the weight of the evidence.[6] Rodriguez notes that,

> "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict, but contends the verdict was against the weight of the evidence…our Court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice." [***Commonwealth v. Burns***, 765 A.2d 1144, 1149, 1150 (Pa. Super., 2000)].

Rodriguez's Brief at 47.

Our standard of review for a challenge to the weight of the evidence is as follows:

---

[6] This claim was properly preserved in a post-sentence motion filed on October 15, 2014.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* [***Commonwealth v.***] ***Brown***, 648 A.2d [1177] at 1189 [(Pa. 1994)]. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. ***Commonwealth v. Farquharson***, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

[***Commonwealth v.***] ***Widmer***, 560 Pa. [308] at 321-22, 744 A.2d [745] at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Widmer***, 560 Pa. at 322, 744 A.2d at 753 (*quoting* ***Coker v. S.M. Flickinger Co.***, 533 Pa. 441, 447, 625 A.2d 1181, 1184-85 (1993)).

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013).

Here, Rodriguez claims: the verdict shocks one's sense of justice in that it ignores the fact that Rodriguez was not part of the original group seeking Trinidad. Accordingly, he was not party to the dispute between them and had no foreknowledge of any designs to kill Trinidad. Rather, he merely accosted Trinidad in response to the shouts of "stop him", only punched Trinidad, and was unaware that Suarez was stabbing Trinidad.

The trial court reviewed the evidence presented at trial and recognized that the jury, as finders of fact, were the sole determiners of credibility.[7] **See** Trial Court Opinions at 7-8. Therefore, the jury was free to reject Rodriguez's version of the events and believe the evidence of the eyewitnesses and the video. Additionally, remembering that a conspiracy may be "formed in a second" and its existence may be very, very fleeting," **Robinson**, supra, we find no abuse of discretion in the trial court concluding the verdict did not shock one's sense of justice. Accordingly, we find no abuse of discretion or error of law.

In his final argument, Rodriguez claims the trial court improperly charged the jury regarding conspiracy to commit third-degree murder. Our standard of review for a challenge to a jury instruction is as follows:

---

[7] **See Commonwealth v. Murray**, 83 A.2d 137, 154 (Pa. 2013) (holding that the finders of fact are free to believe all, some, or none of the evidence presented to it, and are further the sole resolvers of issues of credibility; decisions made by finders of fact in these regards will not be disturbed on appeal).

[W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014) (citation omitted).

Here, the trial court gave the jury the standard jury instruction regarding conspiracy to commit third degree murder, otherwise known as a *Fisher* charge. Specifically, the trial court told the jury:

To prove the defendant guilty of conspiracy to commit third degree murder, the Commonwealth does not have to prove that the object of the conspiracy was to kill the victim. However, the Commonwealth must prove that the object of the conspiracy was to cause at lease serious bodily injury to the victim and then, as a result of the actions of one or more of the conspirators taken during the course of the conspiracy and done in furtherance of that criminal objective, the victim died.

N.T. Trial, 8/7/2014, at 215.

Although counsel for Rodriguez objected to the charge, he conceded it was a proper *Fisher* charge, stating:

I again renew my objection under *The Commonwealth [v.] Fisher*, the recent case. I can state it's my position that there is no crime of conspiracy to commit third degree murder, - I understand the Supreme Court has ruled to the contrary – that there is no, that there has to be a[n] intent to have a conspiratorial agreement. But more importantly, I disagree with how far *Fisher* has gone.

- 11 -

> Your charge, of course, is the correct charge under the *Fisher* standard, but I object to that because in essence it creates a vicarious liability for murder if somebody happened to participate in a fight and someone died.

N.T. Trial, 8/7/2014, at 234.

Accordingly, any challenge to the specific language of the jury instruction has been waived. To the extent counsel's objection is seen as a challenge to *Fisher*, we have no authority to overrule our Supreme Court. Therefore, any such challenge to *Fisher* can only be decided by our Supreme Court. In either event, Rodriguez is not entitled to relief from our Court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2016