J-S95025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL BLACKWELL | |
| Appellant | No. 283 EDA 2016 |

Appeal from the Judgment of Sentence December 22, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-CR-0036731-2014

BEFORE:  STABILE, J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                    **FILED JULY 26, 2017**

Michael Blackwell appeals, *pro se*, from the December 22, 2015 judgment of sentence entered in the Philadelphia County Court of Common Pleas following his bench trial conviction for indirect criminal contempt for violation of a protection from abuse ("PFA") order or agreement.[1]  In a prior judgment order, we remanded this matter for the trial court to conduct a *Grazier*[2] hearing because Blackwell had engaged in hybrid representation by filing, among other things, a *pro se* Pennsylvania Rule of Appellate Procedure 1925(b) statement while represented by Philip Andrew Smoker, Esquire. **See Commonwealth v. Blackwell**, 283 EDA 2016, unpublished

_____

[1] 23 Pa.C.S. § 6114.

[2] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

memorandum (Pa.Super. filed Mar. 24, 2017). On remand, the trial court held a hearing, concluded that Blackwell knowingly, intelligently, and voluntarily waived his right to counsel, discharged Attorney Smoker, and allowed Blackwell to proceed *pro se*. **See** Short Certificate, 4/11/17. The matter is now ripe for review. We affirm.

The trial court set forth the following factual and procedural history:

On September 10, 2014, a [PFA] Order was entered against [Blackwell] prohibiting him from having any contact, direct or indirect, with Charmaine Prater. (See PFA 1409V7806.) [Blackwell] had been in a relationship with Prater for approximately three and a half years. (N.T., 12/22/15, p. 11, 6.) The Order provides, in pertinent part, that [Blackwell] "is prohibited from having any contact with plaintiff...either directly or indirectly, at any location..." and became effective immediately "until otherwise modified or terminated by this Court after notice and hearing." (See PFA 1409V7806, P3, 9.)

On October 12, [2014], [Blackwell] was served with the PFA by Philadelphia Police Officer, Nannette Cheatum. (N.T. p.47, 4-5.) Prater testified that after being served with the PFA and despite being prohibited from doing so, [Blackwell] began contacting her by way of telephone. (N.T., 12/22/15, p. 13, 11-19.) Without being provoked to do so, [Blackwell] sent Prater a plethora of unsolicited text messages and called her cell phone numerous times. (N.T. p. 21, 23-25; p. 22, 1-5.) Prater testified to and presented proof that [Blackwell] sent her the following text messages, despite the PFA Order prohibiting him from doing so . . . . In addition to receiving unsolicited text messages, Prater testified that she also received uninvited telephone calls from the same phone number that [Blackwell] used to send the text messages from. (N.T. p. 20, 18-23---p. 21, 23-25 -p. 22, 1-5.)

Prater, whom has known [Blackwell] since Junior High School, credibly testified that she was extremely familiar with Appellant's telephone number and voice as she had

prior communications with Appellant over the course of their three and a half year relationship. (N.T. p. 10, 1-2, 8-9; p. 14, 19-25; p. 15, 1-8.)

. . .

On October 27, 2014, [Blackwell] was subsequently arrested and charged with two counts of Contempt for Violation of an Order or Agreement, 23 Pa. C.S. § 6114 and two counts of Harassment-Subject Other to Physical Contact, 18 Pa. C.S. § 2709.

On December 22, 2015, [Blackwell] waived formal arraignment and ple[]d not guilty to the charges brought against him. [Blackwell] proceeded to a one-day bench trial, at the conclusion of which [Blackwell] was found the guilty of one count of Contempt for Violation of an Order or Agreement, 23 Pa. C.S. § 6114. The trial court immediately imposed a sentence of six months probation. [Blackwell] did not file a post-sentence motion.

Opinion, 6/9/16, at 3-5, 1-2 ("1925(a) Op."). On January 19, 2016,

Blackwell timely filed a notice of appeal.

Blackwell raises[3] seven issues[4] on appeal:

_____

[3] Preliminarily, we must discuss Blackwell's failure to comply with the Pennsylvania Rules of Appellate Procedure. Blackwell's brief fails to include a statement of jurisdiction, a statement of the scope and standard of review, a statement of the questions involved, or a summary of the argument. **See** Pa.R.A.P. 2114, 2116, 2117. The argument section of Blackwell's brief contains very little citation to relevant authority or matters in the record, fails to show where in the record Blackwell preserved these issues for appeal, and does not specify the appropriate relief for each issue. **See** Pa.R.A.P. 2119(b), (c), (e). "Although Pennsylvania courts endeavor to be fair to *pro se* litigants in light of the challenges they face conforming to practices with which attorneys are far more familiar, [we] nonetheless long have recognized that we must demand that *pro se* litigants comply substantially with our rules of procedure." **Commonwealth v. Spuck**, 86 A.3d 870, 874 (Pa.Super. 2014) (internal citation omitted). Further, "'[t]his Court will not act as counsel' for an appellant who has not substantially

*(Footnote Continued Next Page)*

1. The [trial] court erred and abused its discretion as well as denied [Blackwell] due process because the [trial] court did not compel the [Commonwealth] to meet its burden of proof showing that the [trial] court had subject matter jurisdiction.

2. Did the [trial] court err[] and abuse[] its discretion as well as den[y Blackwell] due process, by allowing insufficient ev[]idence to establish probable cause for the arrest of indirect criminal contempt and har[]as[s]ment on two separate occas[]ions, when thirteen (13) of the eighteen (18) of the alleged text messages submitted for probable cause, failed to indicate times and dates.

3. Did the [trial] court err[] and abuse[] its discretion as well as den[y Blackwell] due process, when [the trial] judge . . . who hears both PFA cases (common pleas court) and violations of PFA cases (municipal court) presided over and/or had knowledge and information of both [Blackwell's] PFA and criminal contempt, in v[io]lation of any and all governing conflict of interest statutes and laws.

_(Footnote Continued)_ ———————————

complied with our rules." **_Id._** (quoting **_Bombar v. W. Am. Ins. Co._**, 932 A.2d 78, 93 (Pa.Super. 2007)).

Based on Blackwell's failure to adhere to the Rules of Appellate Procedure, this Court has the right to quash or dismiss Blackwell's appeal pursuant to Rule 2101. **_See_** Pa.R.A.P. 2101 (noting that parties appearing before this Court "shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit . . . and, if the defects are in the brief or reproduced record of the appellant and are substantial," we may quash or dismiss the appeal). However, "in the interest of justice we address the arguments that can reasonably be discerned from this defective brief." **_Commonwealth v. Lyons_**, 833 A.2d 245, 252 (Pa.Super. 2003).

[4] Because Blackwell's brief does not contain a statement of questions involved, we have aggregated these issues from the headings in the argument section of his brief.

- 4 -

4. Did the [trial] court err[] and abuse[] its discretion as well as deny [Blackwell] due process, by arbitrarily and capriciously waiv[ing] [Blackwell's] right to a formal arraignment, when [Blackwell] "did not" knowingly and voluntarily waive this right, as at no time, did the court colloquy [Blackwell], either orally or in writing.

5. The [trial] court erred and abused its discretion as well as denied [Blackwell] due process, by failing to find the plaintiff in contempt for violating the mutual PFA as admitted to by the plaintiff and established by the record.

6. Throughout these proceedings, all documents from the court pertaining to MC-51-CR-0036731-2014, were captioned, "Municipal Court", conversely and [w]ithout [Blackwell's] knowledge or information, the court arbitrarily change[d] the [j]urisdiction of the court by sitting common pleas court officials [o]n the [b]ench of a [m]unicipal [c]ourt [p]roceedings.

7. As the right to effective [a]ssistance of [c]ounsel is well established [a]nd constitutionally protected, did the court [commit an] error of law by its failure [t]o assure the [a]ppellant competent legal counsel/attorney/lawyer [t]hroughout proceedings.

Blackwell's Br. at 2-6, 8-9.

In his first and sixth issues, Blackwell argues that the trial court lacked subject matter jurisdiction to hear this case. Blackwell asserts that he challenged the subject matter jurisdiction of the trial court by motion and, without explaining how the trial court lacks subject matter jurisdiction, asserts that the Commonwealth failed to prove that the trial court had subject matter jurisdiction.

"Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented[,] . . . and is a matter of

substantive law." ***Commonwealth v. Bethea***, 828 A.2d 1066, 1074 (Pa. 2003). Such a "question is purely one of law, [for which] our standard of review is *de novo*, and our scope of review is plenary." ***Id.*** at 1071.

Blackwell's argument is without merit. It is well settled that a judge of the Court of Common Pleas has jurisdiction over the adjudication of indirect criminal contempt, regardless of whether a defendant's case has a municipal court docket number. ***See Commonwealth v. Burton***, 624 A.2d 138, 143 (Pa.Super. 1993) ("the Protection From Abuse Act provides specifically that its protection and violations thereof are to be, *unless the court is unavailable*, under the auspices of the *Court of Common Pleas*") (emphasis in original).

Next, Blackwell argues that the evidence was insufficient to establish probable cause for his arrest. Blackwell asserts that police lacked probable cause to arrest him because 13 of the 18 text messages that the victim showed to police "did not have a date or time attached[.]" Blackwell's Br. at 4. Although Blackwell's claim could be read as a challenge to the sufficiency of the evidence to convict him of indirect criminal contempt,[5] in the argument section of his brief Blackwell argues that the police lacked probable cause to arrest him. Because the proper vehicle "to test the

---

[5] To the extent that Blackwell argues that evidence was insufficient to convict, we conclude the claim lacks merit for the reasons stated in the thorough and well-reasoned opinion of the Honorable Michael Fanning, which we adopt and incorporate herein. ***See*** 1925(a) Op. at 6-9.

sufficiency of the Commonwealth's evidence pre-trial . . . . is a petition for a writ of *habeas corpus*," **Commonwealth v. Marti**, 779 A.2d 1177, 1179 n.1 (Pa.Super. 2001), and Blackwell raises this claim for the first time on appeal,[6] we conclude that Blackwell has waived this argument. **See** Pa.R.A.P. 302; **see also Commonwealth ex rel. Kress v. Rundle**, 228 A.2d 772 (Pa. 1967) (finding waiver of claims raised by *habeas corpus* petitioner for first time on appeal).

Next, Blackwell argues that the trial court erred and abused its discretion because the Honorable Holly F. Ford hears petitions for PFA orders and indirect criminal contempt cases for violations of PFA orders. Blackwell baldly asserts that he was denied due process because Judge Ford "had information and knowledge of both [Blackwell's] PFA case and [c]riminal [c]ases resulting from the PFA, and as such should have recused herself from [Blackwell's] cases[.]" Blackwell's Br. at 4.

Blackwell has waived this claim as well. The issue of recusal is waived where the "appellant presents no evidence that he sought a recusal at any

---

[6] On October 1, 2015, Blackwell filed a *pro se* motion that included a motion to dismiss for failure to state a claim upon which relief can be granted. Even if we were to construe Blackwell's motion as a petition for a writ of *habeas corpus*, this motion did not preserve Blackwell's issue for appeal because he was counseled at that time. As such, Blackwell engaged in hybrid representation, and his *pro se* motion was a legal nullity. **See Commonwealth v. Nischan**, 928 A.2d 349, 355 (Pa.Super. 2007) (concluding that defendant's *pro se* post-sentence motion, filed when defendant was represented by counsel, was "a nullity, having no legal effect").

time before the . . . verdict." **Commonwealth v. Johnson**, 719 A.2d 778, 790 (Pa.Super. 1998). Further, even if Blackwell had filed an appropriate motion to recuse, the record shows that Judge Fanning presided over Blackwell's bench trial, not Judge Ford. Although Judge Ford presided over a motion *in limine* hearing, Blackwell fails to explain how this prejudiced him.

Next, Blackwell argues that the trial court abused its discretion and denied him due process by denying him a formal arraignment. Blackwell claims he never waived a formal arraignment. Blackwell's Br. at 5.

We conclude that Blackwell's claim is waived for failure to develop his argument under Rule 2119(a). **See** Pa.R.A.P. 2119(a); **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa.Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. . . . [W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may . . . find certain issues to be waived"). Blackwell fails to cite any case law regarding the waiver of formal arraignment and provides no basis for relief or any indication as to what type of relief would be available. "This Court will not act as counsel and will not develop arguments on behalf of an appellant," **Coulter v. Ramsden**, 94 A.3d 1080, 1088 (Pa.Super. 2014), and we make no exception here.

Next, Blackwell argues that the trial court erred and abused its discretion in failing to find the victim in contempt for violating a PFA order that directed her not to contact Blackwell. Blackwell asserts that the trial

court should have recognized that the victim "enticed [Blackwell] into a violation and then use[d] the police and the legal system to punish [him]." Blackwell's Br. at 7. Additionally, Blackwell asserts that the victim's actions show that he did not act with wrongful intent. We disagree.

While the trial court, out of an abundance of caution, appointed the victim Fifth Amendment counsel, the victim was neither charged with nor tried for indirect criminal contempt. "The district attorney," not the trial court, "is afforded the power to prosecute on behalf of the Commonwealth, and to decide whether and when to prosecute." *Hearn v. Myers*, 699 A.2d 1265, 1267 (Pa.Super. 1997). Further, to the extent Blackwell argues he lacked the required intent because of the victim's conduct, this claim lacks merit. *See* 1925(a) Op. at 7; *Commonwealth v. Brumbaugh*, 932 A.2d 108, 111 (Pa.Super. 2007) ("[W]rongful intent can be imputed by virtue of the substantial certainty that [one's actions will be] . . . in violation of the PFA [o]rder.").

Finally, Blackwell argues that he received ineffective assistance from the multiple trial counsel who represented him in this matter. However, we cannot reach this argument, as it is well settled that claims of ineffective assistance of counsel, except in rare circumstances,[7] must be raised in a Post Conviction Relief Act ("PCRA") petition. *See Commonwealth v.*

---

[7] Blackwell does not argue that these circumstances apply.

*Harris*, 114 A.3d 1, 5 (Pa.Super. 2015) ("Our Supreme Court determined [in *Commonwealth v. Holmes*, 79 A.3d 562 (Pa. 2013),] that, absent certain circumstances, 'claims of ineffective assistance of counsel are to be deferred to PCRA review; . . . such claims should not be reviewed upon direct appeal.'") (quoting *Holmes*, 79 A.3d at 576).  Therefore, we do not reach the merits of Blackwell's ineffectiveness claims.[8]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2017

---

[8] Our decision does not preclude Blackwell from raising these claims in a timely PCRA petition.